STATE OF CONNECTICUT *v.* GEORGE PERELLI.

STATE OF CONNECTICUT *v.* CAMILLO VENEZIA.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued February 7—decided July 15, 1941.

*Louis Feinmark,* with whom was *Louis Sperandeo,* for the appellants (defendants).

*Abraham S. Ullman,* state's attorney, with whom were *Ralph H. Clark,* special assistant state's attorney and, on the brief, *Arthur T. Gorman,* assistant state's attorney, for the appellee (the state).

ELLS, J. Upon the first trial of this case a lieutenant of state police was offered as a witness by the state and asked to relate a conversation he had overheard between the defendants while they were in jail,

carried to him by dictaphone. Such part as was in English he had repeated to an assistant; he translated the Italian portion and dictated the English, and the assistant had written it all down in a book. The witness was unable to testify without using a memorandum he had made from the book. Upon the appeal we concluded that although his testimony purported to be that of a recollection refreshed by the memorandum, the unmistakable conclusion from all the evidence in the record was that he simply read the memorandum without having any independent recollection of the content or details of the conversation. The paper from which he read was a copy and the original clearly was not admissible as past recollection recorded because it contained certain assumptions or versions made by the witness, rather than a mere interpretation of the statements made in Italian by the accused. The account of these conversations received by the jury was both incorrect and highly prejudicial, and we held that when the whole situation was clearly before the trial court the motion to strike out the entire testimony should have been granted. *State* v. *Perelli*, 125 Conn. 321, 326-7, 5 Atl. (2d) 705.

Upon the second trial, about two years later, the same witness was produced. When he was asked if he could tell any of the things he heard over the dictaphone, and before he answered, counsel for the defendants claimed the right of preliminary cross-examination, which the court refused to grant. No exception was taken. Furthermore, the court's ruling was within its discretion. The witness then proceeded to tell what he had heard and was subjected to a searching cross-examination, particularly as to whether he had testified from his own recollection of what he heard, or was repeating from memory the contents of the inadmissible memorandum. The result was a re-

peated insistence by the witness that he was testifying
from his independent recollection and was not merely
stating what he remembered from reading the paper.
When the state rested its case the defendants moved
to strike out his entire testimony, on the ground that
the conclusion was inevitable that the witness was
merely giving a memorized statement of what the
paper contained. The court denied the motion, the
defendants excepted, and have made the ruling a prin-
cipal assignment of error. Without now discussing in
detail the present evidence, we are satisfied that it
establishes the fact that the court did not abuse its
discretion. The witness testified that he had suffered
a prolonged illness between the time he heard the
conversations and the date of his testimony at the
first trial; that he had now fully recovered his health
and had a present recollection of the conversations,
refreshed by reading the paper prior to testifying. At
the first trial he had the memorandum before him,
and read from it. At the second trial he did not have
it before him. He said he had read it ten or fifteen
times, in anticipation of his testimony, in order to
refresh his recollection, and that he had read it for
that purpose the night before he testified. Neither
the paper nor the book it was taken from were ad-
missible in evidence, for the reasons stated in *State* v.
*Perelli*, supra, 327. The reason he gave for the recov-
ery of his memory is not persuasive, but it was suffi-
cient to warrant consideration by the jury. The
motion to strike out was properly denied, but it would
be the duty of the trial judge to carefully instruct the
jury upon the law involved.

A major claim is that inadequate instructions were
given to the jury on this point. The defendants re-
quested the court to charge: "If you should find that
Lieutenant Virelli, in fact, has no present recollection

in this case and is merely giving a memorizing of a paper, then you should discard such testimony of his concerning what he claims to have heard and not allow it to affect your judgment in arriving at your decision in this case. The mere reciting by Lieutenant Virelli, if you find such to be the fact, of something which he has memorized from a paper or document not in evidence and not proper for your consideration, does not constitute evidence." The defendants were entitled to a substantial compliance with this request. While the question of the admissibility of the evidence was for the trial judge to determine, the jury must decide as a fact whether the witness had an independent recollection, and if they concluded, upon weighing the evidence and the credibility of the witness, that he was in effect stating only what he had memorized from reading an inadmissible document, they must disregard the whole, or that part which they found was so based. The court did not charge as requested, but after summarizing Virelli's testimony on this point and setting forth his claim that he testified from an independent recollection, refreshed, directed the jury to examine his testimony "like that of any other witness, and give it such weight as it believes it is entitled to," and "If there is any evidence . . . from which it may be reasonably inferred that this testimony of Virelli is not that of an independent recollection, refreshed . . . that fact may of course be taken into consideration in weighing his testimony." The principal defect is in the last clause. Instead of telling the jury that unless the testimony actually represented a refreshed recollection they should disregard it, the trial court in effect instructed them that if they found this to be so, it would merely go to the weight of testimony. The jury should have been instructed that if they found that his testimony was not that of

an independent recollection refreshed, but was a memorizing of an inadmissible document, they should disregard the whole, or that part which was a mere memorizing. Virelli was an important witness for the state. The error may well have been as "highly prejudicial" as the refusal of the court to strike out Virelli's testimony in the first trial, where we held that he merely read the memorandum without having any independent recollection of the content or details of the conversation. We see little difference between reading from the memorandum and reciting a memorized version of its contents, and the jury should have been given clear instruction that if it found Virelli was doing the latter thing, it must entirely disregard and discard all of his testimony on that point.

Virelli had testified that, listening through the dictaphone earphones, he relayed some of the conversation of the defendant to Mrs. Salvione, and some of it to Lieutenant Schatzman and Officer Schwartz, who wrote it down in a book. Some of it was in Italian, which he translated. The book was offered as an exhibit for identification, and was so received and marked. The state's attorney later stated that he had no intention at any time of offering it as a full exhibit, for he knew it was inadmissible in evidence. Over the repeated objections and exceptions of the defendants the state's attorney handed the book in turn to these three persons as they appeared on the stand, and, in the presence of the jury, asked them what part of the writing was theirs. They answered, in detail. When they had finished their testimony the court asked the state's attorney: "Are you offering the book?" and the answer was, "I am not, if your Honor please, not the contents. I understand from the ruling of the Supreme Court that the contents of the book are not admissible." Thereupon a motion was made for a mis-

trial. The court denied it, but in a vigorous statement
to the jury ordered the testimony of the three wit-
nesses stricken from the record, explained that it had
been admitted because the court assumed it was offered
for the purpose of laying a foundation for an offer of
the contents of the book, and instructed them to
wholly disregard the testimony. While the question
presented is close, we decide that in view of the force-
ful admonition of the court at the time, it was justified
in concluding, in its discretion, that the motion for a
mistrial ought not to be granted. Under the evidence
produced in this case, the testimony should not have
been admitted and the ruling of the trial court was
correct. It is not a situation where the issue was
whether Virelli had heard the conversation at all, or
whether his testimony that he listened to it and dic-
tated it was essentially false.

Upon the former trial the wife of the deceased was
permitted to testify that her husband told her he was
going to New Haven to meet the defendants and tell
them he would have nothing more to do with a crim-
inal conspiracy between himself and the defendants
to murder a third person in no way connected with
the present case. We held she might state that he told
her he was going to New Haven to meet the defend-
ants, but that the further testimony went far beyond
the reason and intent of the rule admitting such evi-
dence and hopelessly prejudiced the defendants in the
eyes of the jury. The legal issue concerned the admis-
sibility of testimony of the statement of a deceased
witness as to his intention. The essential character-
istic is that the statement must refer to the intention,
design or state of mind of the declarant. Statements
referring to the acts and intentions, past or present, of
the defendants were pure hearsay as to them, made by
a person not subject to cross-examination. *State* v.

*Perelli* supra, 326. Upon the second trial the court ruled that the witness might state only that Salvione told her he was going to New Haven to meet the defendants; "You cannot go any further, and say that he told her that he was going to New Haven to tell them something." The state's attorney persisted in asking her if he said he was going to tell them something. It was repeatedly excluded, but at one point, after objection but before the court ruled, the witness answered yes, whereupon counsel asked for a ruling upon the objection and the court sustained the objection and added "excluded, for the reasons that the court has already given. . . ." The record is not entirely clear, but we cannot find that such an answer was ever permitted to stand. The ruling was incorrect, however, under the circumstances of this case, for the words "to tell them something" is only the statement by the witness of his purpose. 6 Wigmore, Evidence (3d Ed.) § 1725. The claimed error principally under consideration is that the state's attorney in his argument to the jury stated that Salvione said " 'I will go to New Haven tomorrow night or the next night and I will tell these men something'. . . . Apparently he told them something that violated the code of gang land, something that displeased them mightily and gang land's punishment was swift and sure." The impropriety in the argument lay more in the fact that there was no testimony to support it than in the fact that it was predicated on inadmissible testimony that the accused was going to meet the defendants to tell them something. Under these circumstances we do not find reversible error in this respect.

Complaint was made concerning various other remarks of the state's attorney. None of them exceeded the bounds of fair comment upon the evidence.

The state's attorney, in cross-examining a witness,

asked if he had not made contrary statements to specified persons, and the witness replied he didn't remember. Counsel for the defendants asked the court to make an interim statement to the jury that the questions were no indication that the occurrences took place. The court refused, but did so state in its final charge. Obviously there is no error in this respect.

Numerous errors are claimed in rulings on evidence. There is no error as to the first three, pertaining to the Buick car. It was a question of weight rather than admissibility. The same is true as to the next two, concerning expert testimony. The trial court restricted too much the cross-examination of Mrs. Salvione by the defendants for the purpose of attacking her credibility. She having testified that she was the widow of the deceased, the defendants were entitled to cross-examine her to elicit, if possible, the fact that she was not legally married to him. Also, if upon cross-examination, they could show that she had participated in a violation of the Mann Act or in harboring a female for the purposes of prostitution, these facts might properly be considered as affecting her credibility; both go beyond the sexual offenses, proof of which we held inadmissible for that purpose in *State* v. *Perelli,* supra, 327. As regards the latter offense, this would not be in consequence of the penalty provided by the laws of Pennsylvania, where the offense was claimed to have been committed, but because our own statutes penalize it by a fine of not more than $1000 or imprisonment for not more than fifteen years. General Statutes, § 6227. Whether a particular crime is of a nature to affect credibility is to be determined by the law of the forum. 3 Beale, Conflict of Laws, 1613. In the cross-examination of the same witness various questions concerning a prison confinement of her legal husband, Armando Parillo, and his release were properly ex-

cluded. The defendants did not specifically make the claim that the evidence was offered for the purpose of showing that the witness had been living in adultery with the deceased while her husband was in prison. The ruling concerning the witness O'Donnell was correct; see *State* v. *Palm,* 123 Conn. 666, 677, 197 Atl. 168; as was that concerning the offer of a portion of our opinion in *State* v. *Perelli,* supra. The testimony of the deputy coroner upon rebuttal was, as the trial court said, getting into dangerous ground and should be omitted upon another trial.

The final assignment of error concerns the court's mild rebuke of counsel for the defendants because of certain questions he asked. While not fully warranted as to one, the claim of reversible error cannot be sustained.

Upon this second trial the defendants were again convicted. That fact does not warrant us in overlooking harmful error. Two invalid convictions do not make one valid conviction. The principal error here is essentially the same as in the first trial. Upon the second trial it was important that the jury be clearly instructed to disregard Virelli's testimony if they found he was merely giving a memorized version of the incorrect memorandum. This was not done with sufficient clarity. Because of this, and other reasons we have given, we conclude that there must be a new trial.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.