### STATE OF CONNECTICUT *v.* CHARLES F. UBALDI
### (9233)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued April 5—decision released July 5, 1983

*Timothy C. Moynahan,* with whom, on the brief, was *Kevan J. Acton,* for the appellant (defendant).

*John A. Connelly,* assistant state's attorney, with whom were *Catherine J. Capuano,* special assistant state's attorney, and; on the brief, *Francis M. McDonald,* state's attorney, *Bradford J. Ward,* assistant state's attorney, and *Todd M. DeMatteo,* legal assistant, for the appellee (state).

SHEA, J. The defendant has appealed from his conviction of five counts of larceny in the first degree, in violation of General Statutes § 53a-122, and one count of larceny in the second degree, in violation of General Statutes § 53a-123,[1] based upon his conversion of tax monies collected on behalf of the city of Waterbury. These charges of larceny against the defendant arose from incidents which occurred during his tenure as a deputy sheriff of New Haven County. At trial the state presented the testimony of numerous witnesses, the substance of which was that the defendant collected back taxes owed the city of Waterbury, deposited the money in a bank account and issued checks on that account for his personal use. The defendant testified on his own behalf and called several witnesses, three of whom testified only to his good character.

---

[1] "[General Statutes (Rev. to 1975)] Sec. 53a-122. LARCENY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of larceny in the first degree when: (1) The property or service, regardless of its nature and value, is obtained by extortion, or (2) the value of the property or service exceeds two thousand dollars.

"(b) Larceny in the first degree is a class B felony."

"[General Statutes (Rev. to 1975)] Sec. 53a-123. LARCENY IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle, (2) the value of the property or service exceeds five hundred dollars, or (3) the property, regardless of its nature or value, is taken from the person of another.

"(b) Larceny in the second degree is a class D felony."

The defendant claims a new trial on the ground that the trial court erred in failing to grant either of his two motions for a mistrial. According to the defendant, his motion for a mistrial should have been granted when: (1) during his cross-examination, the prosecutor implied by a question that the defendant had used city funds to pay a gambling debt; and (2) during closing argument, the prosecutor urged the jury to draw an unfavorable inference from the defendant's failure to call a witness whose testimony had been excluded from consideration of the jury by the trial court. We find error only in the refusal to declare a mistrial on the basis of the comments made by the prosecutor during closing argument.

I

The defendant's first claim of error involves the proper bounds of cross-examination. During its case in chief the state introduced financial records showing disbursements made from the bank account into which the defendant had deposited city funds. After the defendant had completed his direct testimony, the state on cross-examination sought to elicit evidence regarding the personal nature of the disbursements made from the account. At one point the following exchange occurred between the assistant state's attorney and the defendant: "Q. And there is a third marking here, Nick Jamele? A. Yes, sir. Q. He is your bookie, isn't he, Mr. Ubaldi?" Defense counsel objected immediately. The jury was excused. The defendant moved for a mistrial and took an exception when the trial court denied the motion. Once the jury reconvened, the trial court issued a cautionary instruction to the jury at the request of the defendant.[2]

[2] The curative instruction given by the trial court was as follows: "All right, ladies and gentlemen, we are going forward with the trial. Mr. Ubaldi's attorney has objected to the question and I have sustained the ob-

562

The defendant claims that the implication in the question of the prosecutor that Jamele was the defendant's bookie was an attempt to introduce inadmissible evidence of bad conduct. This reference to illegal gambling, according to the defendant, not only unfairly prejudiced him in a general sense, but also undermined his credibility, which was crucial to his theory of defense that he lacked the requisite mens rea to commit the crime charged.

The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial. *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982); *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); see Practice Book § 887. When a mistrial is sought on the ground that a prosecutor's improper remarks violated the defendant's constitutional right to due process of law the same standard applies. See *State* v. *Cosgrove,* 186 Conn. 476, 488–89, 442 A.2d 1320 (1982); *State* v. *Hawthorne,* 176 Conn. 367, 372, 407 A.2d 1001 (1978). The burden on the defendant is to show that the prosecutor's remarks were prejudicial in light of the entire proceeding. See *State* v. *Cosgrove,* supra, 488–89; *State* v. *Hawthorne,* supra, 372; *State* v. *Kinsey,* 173 Conn. 344, 348–49, 377 A.2d 1095 (1977). The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. *State* v. *Cosgrove,* supra, 488–89, citing *Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

jection to the question and he need not answer it and I would urge you to disregard the question itself. Pay no heed to it. It is not relevant. It is not significant in the case. It is to play no part in your deliberations."

Upon reviewing the defendant's first claim of error, we note that the trial court, as a result of its familiarity with the context in which the prosecutor's remark was uttered, was in a favorable position to evaluate any resultant prejudice. Therefore its determination as to the fairness of the defendant's trial must be afforded great weight. *State* v. *McCall,* 187 Conn. 73, 77, 444 A.2d 896 (1982); see *State* v. *DeMatteo,* supra, 704; *State* v. *Gooch,* supra, 25; *State* v. *Piskorski,* 177 Conn. 677, 720, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). We do not condone the assistant state's attorney's inquiry, which carried an ugly innuendo that the defendant gambled illegally with municipal funds. The impropriety of such an implication is unquestionable and its utterance without excuse.[3] The prejudice to the defendant, however, was promptly minimized by the action of the trial court. Once an objection to the question was made by the defendant, the jury was dismissed and excluded from the subsequent discussion of the grounds of the objection. Upon reconvening the jurors, the trial court immediately instructed them to disregard completely the state's question. The defendant made no claim at trial, nor has he claimed on appeal, that the curative instruction given to the jury was in any way defective. We have often held that a prompt cautionary instruction to the jury regarding improper prosecutorial remarks obviates any possible harm to the defendant. See *State* v. *Nowakowski,* 188 Conn. 620, 624, 452 A.2d 938 (1982); *State* v. *Piskorski,* supra, 720–21; *State* v. *Hawthorne,* supra, 373. Under the circumstances we find it appropriate to defer to the trial court's determination that the improper question of the prosecutor did not deprive the defendant of a fair trial.

[3] ABA, Standards Relating to the Prosecution Function and the Defense Function, § 5.7(d) (1971) provides: "It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner cannot support by evidence." In addition, the Code of Professional Responsibility, DR-7-106(C)(1), prohibits an attorney appearing before a tribunal from stating or alluding "to any matter . . . that will not be supported by admissible evidence."

## II

The defendant's second claim of error involves the propriety of certain remarks in the state's summation to the jury. During its rebuttal the state sought to subpoena Nick Jamele as a witness, presumably to refute the defendant's statement on cross-examination that certain payments to Jamele were for repairs to the defendant's house. The defendant advised the court, outside the hearing of the jury, that the witness Jamele would seek to exercise his fifth amendment privilege of silence and requested that the court hear argument and testimony on whether such exercise should be permitted in the absence of the jurors to avoid prejudicing them in any way. The court permitted examination of Jamele outside the jury's presence. Apparently Jamele was facing federal prosecution for gambling activities and for tax evasion. During the examination the state sought to question Jamele regarding the nature of any construction work done for the defendant, whether Jamele had received money from the defendant, whether the recorded payments were for work done on the defendant's property, and whether they were reported to federal income tax authorities. The trial court sustained the right of the witness to remain silent in each of these areas of inquiry, thereby foreclosing any examination of Jamele before the jury. The state took exception to each of the court's rulings, but has not pressed any claim of error in this matter on appeal.

During closing argument the state remarked: "Where is Nick Jamele? Where is the man that he [the defendant] paid six thousand dollars to?" The defendant immediately objected to the comment, but the trial court overruled the objection and allowed the state to continue without any cautionary instruction to the

jury.[4] Later, outside the presence of the jury and prior to the jury charge, the defendant moved for a mistrial on the ground that, because of the court's instruction for the jury to disregard the question implying that Jamele was the defendant's bookie and Jamele's successful invocation of his fifth amendment privilege, the state's request that an unfavorable inference be drawn from the defendant's failure to call Jamele was improper. The state responded that the remark was a rhetorical question within the proper bounds of summation. When the trial court denied the motion for mistrial, the defendant took an exception to the ruling but did not request that any special instructions be given to the jury.

The state has not attempted on appeal to justify its challenged remarks upon the ground urged in the trial court or on any others. Instead, the state asks this court to apply the due process analysis discussed in part I of this opinion to the closing remarks of counsel and to sustain the conviction because insufficient prejudice befell the defendant as a result. The state argues that our decision in *State* v. *Daniels,* 180 Conn. 101, 429 A.2d 813 (1980), should govern our determination here. In *Daniels,* the defendant appealed from his assault conviction on the ground that the trial court erred in permitting the state to urge in summation that the jury

---

[4] "Mr. Ward: Where is Nick Jamele? Where is the man that he paid six thousand dollars to?

"The Court: Please, let there be no whispering in the courtroom.

"Mr. Moynahan: Objection, Your Honor. May I approach the bench?

"The Court: Yes.

"I take it counselor you don't intend to pursue it more than you have already?

"Mr. Ward: No, Your Honor.

"Where was John Bedell? Why didn't he come forward and testify?

"Mr. Moynahan: Same objection, Your Honor.

"Mr. Ward: May I continue, Your Honor?

"The Court: Yes."

draw adverse inferences from the failure of the defendant to call two witnesses, whose availability was never established. Id., 107. Although that appeal presented the issue of whether, when the defendant objected to the remarks, the trial court's failure to take contemporaneous action to caution the jury deprived the defendant of a fair trial and not the present issue of the propriety of the denial of a motion for a mistrial, the state maintains, nevertheless, that the factors analyzed by the court in *Daniels* are applicable here. In *Daniels* we indicated that the following factors supported a determination that the prosecutor's remarks had not deprived the defendant of a fair trial: (1) the missing testimony was not crucial to the defendant's case; (2) the state's case against the defendant was strong; (3) the defendant's case was relatively weak; (4) the defendant had testified and so his right to remain silent had not been jeopardized; (5) the general jury instructions regarding the burden of the state to prove every element of the alleged crimes and the defendant's right to remain silent were correct; (6) the defendant did not request that the improper remark be stricken and that a curative instruction be given in addition to moving for a mistrial; and (7) the defendant took no exception to the general charge to the jury. Id., 112–13. We decline, however, the state's invitation to apply *Daniels* or the standard due process analysis mechanistically to a case involving intentional prosecutorial misconduct.

Our review of Connecticut case law dealing with prosecutorial misconduct has failed to uncover a situation precisely like the one before us.[5] In the court below the

_____

[5] *State* v. *Perelli,* 128 Conn. 172, 21 A.2d 389 (1941), is the only instance of prosecutorial misconduct factually similar to that in the case at bar. In *Perelli,* a prosecutor in argument referred to testimony which had been stricken from the record on the ground that it was inadmissible hearsay. Id., 179. This court declined to view the remark as a basis for reversible

state first made an inquiry implying some unlawful transactions between the defendant and Nick Jamele, which the trial court instructed the jury to disregard. The state then sought to produce Jamele as a witness in order to prove the unsavory character of his relationship with the defendant. When the court ruled against the state, permitting Jamele to invoke the fifth amendment privilege and effectively depriving the state of such testimony, the state duly excepted to the ruling. Afterwards, in total disregard of that ruling intended to protect the defendant against consideration by the jury of irrelevant and prejudicial matters, the state's attorney argued that the jury should draw a negative inference from the fact that the defendant had not produced Jamele as a witness.

The prosecutor's argument to the jury was improper both because the inference sought was clearly impermissible and because it demonstrated a complete disregard for the tribunal's rulings.[6] The record of the

error because the testimony should have been admitted, and would have been admitted had the trial court not misread a prior ruling of this court on the identical matter raised at the defendant's first trial. *Perelli* is distinguishable from the present case in that the state here makes no claim that the trial court's rulings were erroneous. Moreover, in *Perelli,* the issue of prosecutorial misconduct was apparently raised for the first time on appeal, since there was no record of a timely objection to the prosecutor's remarks or of a timely motion for mistrial.

[6] In criminal prosecutions either the state or the defendant may argue to the jury that an unfavorable inference should be drawn from the absence of a particular witness at trial. Permission from the trial court must be sought in advance when either party wishes to include such an inference in its closing remarks. Such an inference is to be permitted only where "there is sufficient evidence for the jury to find that the absent witness is (1) available to the party against whom the inference is sought to operate and (2) one whom that party would naturally be expected to produce." *State* v. *Daniels,* 180 Conn. 101, 113–14, 429 A.2d 813 (1980). Clearly the state had no right to such an inference once the trial court ruled that Jamele could exercise his right to remain silent. Nor does the record indicate that a request for such an inference was made to the court. As such, the prosecutor's remark constituted misconduct. "It is unprofessional conduct for

proceedings affords no reasonable inference that this remark of an experienced prosecutor was inadvertent and on appeal the state wisely makes no such claim.[7] Instead, the state insists that this court can only reverse the trial court if the proceedings below, when taken in their entirety, could be deemed to have deprived the defendant of his constitutional right to a fair trial. The ultimate implication of this argument is that a state's attorney may choose deliberately to ignore any trial court ruling just as long as the state has amassed overwhelming evidence of a defendant's guilt and the state's attorney's misconduct relates to only a portion of that evidence. We decline to place such a restraint on the ability of this court to defend the integrity of the judicial system.

In *Smith* v. *Phillips,* 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), the United States Supreme Court held that the constitutional guarantee of due process of law does not require granting a new trial when a defendant could not demonstrate that inadvertent prosecutorial misconduct[8] resulted in prejudice suf-

---

the prosecutor intentionally to . . . mislead the jury as to the inferences it may draw." ABA, Standards Relating to the Prosecution Function and the Defense Function, § 5.8 (a) (1971); see Code of Professional Responsibility DR 7-102 (A) (5). By seeking the inference, the prosecutor demonstrated a flagrant disregard of the trial court's authority. "A lawyer shall not disregard . . . a ruling of a tribunal made in the course of a proceeding . . . ." Code of Professional Responsibility DR 7-106 (A); see ABA, supra, § 5.2 (a).

[7] The defendant has claimed that although the court denied his motion for a mistrial on the basis of the prosecutor's inquiry implying that Jamele was a "bookie," the court in chambers instructed the assistant state's attorney "that was an area that should be stayed away from if there is no evidence for it." The state has not challenged this assertion.

[8] The respondent in *Smith* v. *Phillips,* 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), was before the United States Supreme Court seeking federal habeas corpus relief. He sought to vacate his conviction based on the fact that one of the jurors in the case had applied during the course

ficient to deprive him of a fair trial. "[T]he aim of due process 'is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused' [*Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)]." Id., 219; see *State* v. *Cosgrove,* supra, 488–89. The court also implied that the same analysis should apply to claims of deliberate prosecutorial misconduct. *Smith* v. *Phillips,* supra, 220n. The court recognized, however, that its ruling in a federal habeas corpus case fell short of precluding in all instances an order for a new trial based on a deterrence theory. "Even if the Court of Appeals believed, as the respondent contends, that prosecutorial misbehavior would 'reign unchecked' unless a new trial was ordered, it had no authority to act as it did. Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Id., 221.

The questions before this court then are whether we should grant a new trial in order to deter prosecutorial misconduct which deliberately circumvents trial court rulings and, if so, whether such authority should be exercised in the circumstances presented.

---

of trial for a position as an investigator with the district attorney's office. A connection between the application and the juror was eventually made by members of the office and the application was brought to the attention of the two attorneys prosecuting the respondent's case more than one week before the end of trial. The prosecutors concluded that there was no need to inform the trial court or the defendant of the juror's actions in light of the juror's candor during voir dire about his intent to pursue a career in law enforcement. Id., 212–13. In denying the respondent's post-trial motion to vacate, the trial court judge found that with respect to the prosecutors' conduct, there was no evidence to suggest "a sinister or dishonest motive with respect to [the juror's] letter of application." Id., 214, quoting *People* v. *Phillips,* 87 Misc. 2d 613, 619, 384 N.Y.S.2d 906 (1975). It also concluded that the events giving rise to the motion had not influenced the verdict. Id., 211.

In Connecticut the appropriate remedy for an unfair trial due to prosecutorial misconduct is to vacate the judgment of conviction and to grant a new trial. See *State* v. *Santello,* 120 Conn. 486, 181 A. 335 (1935); *State* v. *Moran,* 99 Conn. 115, 121 A. 277 (1923); *State* v. *Ferrone,* 97 Conn. 258, 116 A. 336 (1922); *State* v. *Ferrone,* 96 Conn. 160, 113 A. 452 (1921). We have not previously addressed the issue of to what extent deliberate prosecutorial misconduct during trial which violates express trial court rulings, unchallenged by the state on appeal, may serve as a basis for vacating a judgment of conviction. We have long held that a court has inherent power to defend its dignity and authority through criminal contempt adjudications; see *Moore* v. *State,* 186 Conn. 256, 259, 440 A.2d 969 (1982); *Whiteside* v. *State,* 148 Conn. 77, 78, 167 A.2d 450 (1961); or to uphold the integrity of its orders through civil contempt proceedings. See *Welch* v. *Barber,* 52 Conn. 147, 156–57 (1884). Appellate tribunals are endowed with a similar power. An appellate court has a "certain inherent supervisory authority over the administration of justice"; *United States* v. *Butler,* 567 F.2d 885, 893 (9th Cir. 1978); in the trial courts below that permits action to deter prosecutorial misconduct which is "unduly 'offensive to the maintenance of a sound judicial process.' " (Citation omitted.) *People* v. *Swan,* 56 Mich. App. 22, 31–32, 223 N.W.2d 346 (1974); see, e.g., *United States* v. *Payner,* 447 U.S. 727, 735 n.7, 100 S. Ct. 2439, 65 L. Ed. 2d 468, reh. denied, 448 U.S. 911, 101 S. Ct. 25, 65 L. Ed. 2d 1172 (1980); *United States* v. *Capone,* 683 F.2d 582, 586 (1st Cir. 1982); *United States* v. *Nembhard,* 676 F.2d 193, 199 (6th Cir. 1982); *United States* v. *Butler,* supra, 890; *United States* v. *Keogh,* 391 F.2d 138, 148 (2d Cir. 1968); *State* v. *Farrell,* 61 N.J. 99, 104, 293 A.2d 176 (1972); *State* v. *Stewart,* 162 N.J. Super. 96, 99, 392 A.2d 234 (1978);

*State* v. *Bartlett,* 96 N.M. 415, 418, 631 P.2d 321 (1981); *Commonwealth* v. *Virtu,* 495 Pa. 59, 68–69, 432 A.2d 198 (1981).

Some tribunals have declined to use such supervisory power on the theory that society should not bear the burden of a new trial because of prosecutorial misconduct where a new trial is not constitutionally mandated. See, e.g., *United States* v. *Modica,* 663 F.2d 1173, 1184 (2d Cir. 1981); *State* v. *Haskins,* 316 N.W.2d 679, 680–81 (Iowa 1982); *People* v. *Galloway,* 54 N.Y.2d 396, 401, 430 N.E.2d 885 (1981). According to some authorities, the evil of overzealous prosecutors is more appropriately combatted through contempt sanctions, disciplinary boards or other means. See generally *United States* v. *Modica,* supra, 1182–85; *Commonwealth* v. *Virtu,* supra, 74 (Larsen, J., dissenting). This court, however, has long been of the view that it is ultimately responsible for the enforcement of court rules in prosecutorial misconduct cases. *State* v. *Ferrone,* 97 Conn. 258, 270, 116 A. 336 (1922). Upsetting a criminal conviction is a drastic step, but it is the only feasible deterrent to flagrant prosecutorial misconduct in defiance of a trial court ruling. We are mindful of the sage admonition that appellate rebuke without reversal ignores the reality of the adversary system of justice. " 'The deprecatory words we use in our opinions . . . are purely ceremonial.' Government counsel, employing such tactics, are the kind who, eager to win victories, will gladly pay the small price of a ritualistic verbal spanking. The practice [of verbal criticism without judicial action]—recalling the bitter tear shed by the Walrus as he ate the oysters—breeds a deplorably cynical attitude towards the judiciary." *United States* v. *Antonelli Fireworks Co.,* 155 F.2d 631, 661 (2d Cir.) (Frank, J., dissenting), cert. denied, 329 U.S. 742, 67 S. Ct. 49, 91 L. Ed. 640, reh. denied, 329 U.S.

826, 67 S. Ct. 182, 91 L. Ed. 701 (1946); see *United States* v. *Bivona,* 487 F.2d 443, 447 (2d Cir. 1973) (citing Frank, J., with approval). Moreover, "[d]eliberate prosecutorial misconduct is presumably infrequent; to invalidate convictions in the few cases where this is proved, even on a fairly low showing of materiality, will have a relatively small impact on the desired finality of judgments and will deter conduct undermining the integrity of the judicial system." *United States* v. *Keogh,* 391 F.2d 138, 148 (2d Cir. 1968).

We recognize that the reversal of a criminal conviction in the exercise of a court's supervisory authority must not be undertaken without balancing other interests which may be involved. *United States* v. *Hasting,* 461 U.S. 499, 103 S. Ct. 1974, 1979, 76 L. Ed. 2d 96 (1983). The trauma which the victim of a heinous crime might undergo by being forced to relive a harrowing experience or the practical problems to be encountered in retrying a case several years after the event require a cautious approach. Id. In the case before us we can visualize no serious obstacles of this kind to a retrial. The victim of the embezzlement which constituted the basis of the larceny charge was the city of Waterbury. Although some of the witnesses for the state who testified at the trial may prove to be unavailable for a retrial, not all of them would be required to enable the state to prove its case. The testimony at the first trial of those who cannot be produced can be introduced. *Taborsky* v. *State,* 142 Conn. 619, 624, 116 A.2d 433 (1955); see *State* v. *DeFreitas,* 179 Conn. 431, 441n, 426 A.2d 799 (1980); McCormick, Evidence (2d Ed.) §§ 254–55; Fed. R. Evid. 804(b)(1). Furthermore, the testimony of the defendant concerning his receipt of the tax payments and his failure to turn over the funds to the city can be used as admissions. *Hope* v. *Valente,* 86 Conn. 301, 307, 85 A. 541

(1912); see McCormick, Evidence (2d Ed.) § 254. We do not have a situation here where highly significant competing social interests outweigh the important judicial consideration of restraining serious prosecutorial misconduct.

No matter how overwhelming the evidence, a court may not direct a verdict of guilty in a criminal case. General Statutes § 54-89; *State* v. *Chapman,* 103 Conn. 453, 486, 130 A. 899 (1925). The case before us is not one where the action of the prosecuting attorney was devoid of prejudicial effect on the defendant. Compare *United States* v. *Drummond,* 481 F.2d 62 (2d Cir. 1973) (reversal because of improper summation absent substantial prejudice). It was to avert unwarranted prejudice that the trial court had told the jury during the cross-examination of the defendant to disregard the prosecutor's remark that Nick Jamele was the defendant's bookie. Later the court foreclosed the state from calling Jamele as a witness and from questioning him in front of the jury by ruling that he had a right to invoke the constitutional privilege of silence in every area of relevant state inquiry. These rulings deprived the state of the opportunity to attack the defendant's character before the jury by either linking the defendant and Jamele in some illicit activity or simply by associating the defendant with a witness who chose to exercise his constitutional right to remain silent. Undaunted, the state then waited until summation to attempt to present the jury with the very innuendo which the court had precluded and argued that they should bear in mind that the defendant had never called Jamele as a witness. The unfairness of this remark is obvious. The negative inference the prosecutor asked the jury to draw from the failure of the defendant to have Jamele testify implied that the defendant was obligated to produce a witness whose invocation of his constitu-

tional right made it impossible to present his testimony. Furthermore, the reference to Jamele as a witness whom the defendant would naturally produce implied an association of the defendant with a person who had been identified as a "bookie." Its effect was to undermine the authority of the trial court's ruling that such a matter should not be considered by the jury. "By reason of his office, [a state's attorney] usually exercises great influence upon jurors." *State* v. *Ferrone*, 96 Conn. 160, 168, 113 A. 452 (1921); accord *United States* v. *Capone*, 683 F.2d 582, 585 (1st Cir. 1982).

The prejudice to the judicial system as well as to the defendant which flows from circumventing the trial court's authority, unlike the prejudice which can be calculated by weighing the evidence presented, is not easily assessed. Accord *People* v. *Swan*, 56 Mich. App. 22, 32 n.6, 223 N.W.2d 346 (1974). "If the accused be guilty, he should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe." *State* v. *Ferrone*, supra, 169. We note that the trial court did not rebuke or admonish the prosecutor upon the defendant's objection to the improper argument. See *State* v. *Daniels*, 180 Conn. 101, 111 n.10, 429 A.2d 813 (1980); *State* v. *Benton*, 161 Conn. 404, 413, 288 A.2d 411 (1971). The trial court's general charge to the jury which included the standard instructions relating to the state's burden of proof and the defendant's right to remain silent cannot reasonably be viewed as obviating the harmfulness of the prosecutor's remarks. See *State* v. *Ferrone*, supra, 168. Nor do we view the failure of the defendant to request a curative instruction in addition to a mistrial as fatal to his claim where deliberate prosecutorial misconduct was met by the trial court's silence in response to a proper objection during summation. Id., 168; see *State* v. *Hawthorne*, 176

Conn. 367, 372n, 407 A.2d 1001 (1978); *State* v. *Santello,* 120 Conn. 486, 493, 181 A. 335 (1935); *State* v. *Moran,* 99 Conn. 115, 121–22, 121 A. 277 (1923).

We are not today abandoning the due process analysis we have consistently applied to constitutional claims of prosecutorial misconduct not involving purposeful disregard of a ruling, which requires the defendant to prove that he was deprived of a fair trial as the result of the misconduct in order to secure a new trial. Nor are we retreating from our statement that "[c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." *State* v. *Laudano,* 74 Conn. 638, 646, 51 A. 860 (1902); see *State* v. *Greenberg,* 92 Conn. 657, 663, 103 A. 897 (1918). We adhere to the principle, however, that "[w]hile the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." (Citations omitted.) *State* v. *Ferrone,* 96 Conn. 160, 169, 113 A. 452 (1921); see *State* v. *Kinsey,* 173 Conn. 344, 351, 377 A.2d 1095 (1977) (*Loiselle, J.,* concurring), quoting *State* v. *Ferrone,* supra, with approval. Where a prosecutor in, argument interjects remarks deliberately intended to undermine the rulings of the trial court to the prejudice of the defendant, his conduct is so offensive to the sound administration of justice that only a new trial can effectively prevent such assaults on the integrity of the tribunal.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.