[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 64
On November 9, 1992, the plaintiff instituted this action on a three-count complaint. The First Count alleges that in 1981 the plaintiff executed a power of attorney with the defendant for the defendant to manage her day-to-day business and management of necessities. After the power of attorney was executed the plaintiff entrusted the defendant with the sum of $16,000 to be held in trust for the plaintiff's benefit and to be solely expended for her benefit. On or about June 3, 1992, after disagreements later to be discussed by the Court, the plaintiff revoked the power of attorney and requested her personal property and return of her $16,000. The plaintiff further alleged that the defendant either commingled the funds of the plaintiff or wrongfully converted the money in violation of their agreement. The Second Count alleges the counts of the First Count claiming that failure to return the funds has caused her severe emotional distress and that the defendant knew or should have known the emotional distress it would cause and that the plaintiff still suffers from emotional distress. Count Three alleges, inter alia, that the defendant was negligent in not returning the funds and as a proximate result caused the emotional distress. The plaintiff seeks money damages.
The defendant is the daughter of the plaintiff (hereinafter called "Baron"), who admits the arrangement concerning her being entrusted with the $16,000. By way of special defense, Baron alleges that the actions alleged in the plaintiff's complaint are the result of undue influence of others. The defendant asserts that the undue influence is that of Jeannette Peterson (hereinafter "Peterson"), the other daughter of the plaintiff and sister of the defendant. The defendant testified that her sister, Peterson, authorized the letter (Exh. 3) and engineered the revocation of the power of attorney to Baron and executed a power of attorney solely to Peterson (Exh. F). Baron asserts that her mother, the plaintiff, is influenced by anyone of them with whom she may be staying with at the time. "She will agree with whatever we tell her she should do. When she was with my sister, she would do what my sister wanted her to do. When she was with me, she did what I wanted her to do. She just wanted to please whoever she was with."
The court concludes from the attitudes of the parties adduced from the evidence that this case involves sisters who originally had good intentions in caring for their widowed mother and now are manipulating the plaintiff, their mother, in furtherance of their CT Page 65 own dislike for each other. Disagreeing siblings are not uncommon in our society and our courts have frequent lawsuits because of stubbornness of the siblings.
Originally the sisters and mother had set up an arrangement to keep Mrs. Stein's estate out of probate or the reach under Title XIX benefits eligibility if she was required to obtain convalescent home services. The sisters originally had a joint power of attorney since 1981. The plaintiff divided her cash between her daughters, the defendant and Peterson, and she shared her time with both her daughters. The plaintiff also divided her personal effects, giving furniture and the likes to the defendant and Peterson. The cash equally divided was at all times intended to be kept for their mother's day-to-day expenses. During the time that the plaintiff was with the defendant, the defendant cashed an insurance policy and shipped the proceeds to Florida, except for $500. The balance of the insurance proceeds was paid to a funeral director in accordance with plaintiff's desires. The plaintiff has been residing in Florida with daughter Peterson for more than 2 years and there has been no communication between her and the defendant. The defendant testified that the sixteen thousand dollars has been retained by her in the Bank of Boston and has not been commingled with the defendant's other assets. The defendant testifies she is ready and willing to return the money that was available for her care. Baron claims that her mother, the plaintiff, cannot handle her own affairs. The only issue made in this case is that the plaintiff is not competent and accordingly cannot prove her complaint. The issue of competency to handle one's affairs is for the Probate Court to decide, at least in Connecticut. As for competency of a witness:
 "To be a competent witness, a person must have sufficient intelligence to observe and receive correct sensory impressions, to remember his observations, and to communicate them to the trier. State v. Manning, 162 Conn. 112, 115, 291 A.2d 750 (1971); State v. Segerberg, 131 Conn. 546, 547-548, 41 A.2d 101
(1945). In addition, the witness must appreciate the moral duty to tell the truth. Ibid. Not only must a witness be competent to testify generally, he must also be competent to speak about the subject matter of his testimony, viz., testify from first-hand knowledge and not hearsay. Gray v. Mossman, CT Page 66 91 Conn. 430, 437-438, 99 A.2d 1062 (1917); State v. Ferrone, 97 Conn. 258, 264, 116 A. 336 (1922)."
Tait and LaPlante, Connecticut Evidence, at page 81.
The Court finds that the plaintiff is competent to testify notwithstanding her medical condition, and fully capable to make demand for the return of her monies, which by the defendant's own testimony belongs to her and was to be kept for her. Whether she is able to handle her own affairs now is no lesser than when they were originally managed by both sisters under a prior joint power of attorney, the defendant is left to her rights to challenge her sister to handle her mother's assets, but not in these proceedings under the guise that she is not competent to handle her affairs. The challenge by the defendant of incompetency is misplaced in this case.
The Court concludes that the plaintiff has met her burden of proof as to the return of the cash held by the defendant for her mother.
The plaintiff alleges that the failure to return the monies or the furnishings constitute a wrongful conversion. With respect to the furnishings, the more credible evidence as testified by the defendant was as follows:
 "When my mother had her stroke and we determined that she could not live in the house any longer and everything had to be liquidated, my sister came up from Florida and under the supervision of my mother with Donald Baron present, myself, Clifford Peterson and Jeannette Peterson, everything was supervised by my mother and divided among us.
 Anything that was left after my sister went back to Florida we were told to get rid of. So my husband and I cleaned out the house, had a tag sale, returned the money to my mother and sold the house under her direction. This is why I don't understand now why my mother and my sister are trying to recover these items that were given to me in nineteen eighty two." (TR-107). CT Page 67
The Court finds that the plaintiff has not met her burden of proof as to any wrongful conversion of the furnishings or personal property.
As to the claim of wrongful conversion of the funds, there is no evidence to conclude that the defendant commingled or appropriated any cash of consequence to her own use. During litigation or probate administration the failure or refusal by a fiduciary to deliver a chattel or cash does not constitute a conversion and such refusal is merely a qualified refusal. MillsAdmr. v. Britton, 64 Conn. 4.
In a wrongful detention of a money claim, however, the Court is empowered to award interest at the rate of ten percent per year, see § 37-3a C.G.S. Rev. 1993.
Accordingly, on the First Count, judgment may enter in favor of the plaintiff for $16,500 plus interest in the amount of $4,025, for a total of $20,525 plus costs.
As to the Second Count, the plaintiff alleges, inter alia, that the defendant's conduct was likely to cause the plaintiff to suffer severe emotional distress; that the conduct was intentional and outrageous because the defendant knew the plaintiff needed the money; that since she put her trust in her daughter the defendant's failure to turn over the money caused depression and severe emotional distress.
Failure to turn over money in a case such as this can in no way leave this Court to conclude that the conduct of the defendant would give a right to the plaintiff to seek compensatory damages. There was no evidence presented to show that the action of the daughter defendant was the cause for any emotional distress to the plaintiff who was already suffering from her stroke of 1981. The testimony of Peterson as to the effect upon her mother, the plaintiff, was not shown to be causally related to the withholding of property. If anything, it was stress of a law suit which is not a compensatory consequential damage.
The only stress and emotional disturbance that this plaintiff can claim is that brought about by her two daughters that may now occupy different places in her life.
Accordingly, judgment as to the Second Count is entered in CT Page 68 favor of the defendant.
As to the Third count, the plaintiff seeks a recovery for emotional distress because the defendant was negligent in not turning over the money to the plaintiff. Again, for the reasoning set out as to consequential damages as to the First and Second Count, the Court finds in favor of the defendant.
Lastly the argument regarding attorney fees is totally rejected. There is no grounds for such an award in this case.
This case to repeat is a feud between sisters who now find themselves standing upon the theory that each is right. Mrs. Stein is a pawn in the argument of the sisters. As pointed out in this decision, there is no conversion that can result in the consequential damages sought.
Conversion is a suit for damages by the owner of property against one who wrongfully appropriated the property in derogation of the rightful owner. The defendant in this case did not wrongfully appropriate the property of the plaintiff. The refusal to return the property of the plaintiff is a qualified refusal. See Mills.[,] supra.
Frank S. Meadow State Trial Referee