PAUL MURRAY *v.* RODERICK G. TAYLOR ET AL.
(AC 19569)

Lavery C. J., and Spear and Dranginis, Js.

Argued January 9—officially released August 28, 2001

*William C. Franklin,* for the appellant-appellees (named defendant).

*Edward F. Hennessey,* for the appellee-appellant (plaintiff).

*Opinion*

SPEAR, J. In this negligence action, the named defendant, Roderick Taylor,[1] appeals from the judgment of the trial court rendered on a jury verdict in favor of the plaintiff, Paul Murray. Taylor claims that the court (1) should have set aside the verdict against him because the conduct of the plaintiff's counsel violated his right to a fair trial, (2) should have set aside the verdict as excessive and (3) improperly instructed the jury.

The plaintiff cross appeals claiming that the trial court improperly granted the motion to set aside the verdict awarding him damages from the defendant Woodbury Ski and Racquet, Inc. (Woodbury). He claims that the court improperly set aside the award of damages after entering a default against Woodbury. The plaintiff also claims on his cross appeal that the court improperly refused to submit to the jury his claim against Taylor under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and his recklessness claim against Taylor. We affirm the judgment with respect to Taylor's appeal and with respect to the plaintiff's cross appeal against Taylor, but we reverse the judgment setting aside the jury verdict for the plaintiff against Woodbury.

The following facts and procedural history are relevant to these appeals. On the evening of March 12, 1993, the plaintiff, a business invitee, was injured in a sledding accident at a commercial skiing facility known as the Woodbury Ski and Racquet Club (club). The club was operated by Taylor and located on property owned by

---

[1] The five original defendants in this action were Roderick Taylor; Woodbury Ski and Racquet, Inc.; Romney Ames; Ronald B. Ames and Lillian Ames.

Taylor and Woodbury. The plaintiff sustained serious injuries, including a concussion and multiple fractures to his face and teeth, when his sled crashed into an unattended vehicle parked at the base of the slope.

The plaintiff filed a four count complaint alleging negligence (count one), wilful and malicious failure to protect or warn (count two) and a CUTPA violation (count three) against Taylor and Woodbury, and negligence (count four) against Romney Ames, Ronald B. Ames and Lillian Ames.[2] In his answer, Taylor raised the special defense of contributory negligence. Thereafter, Woodbury was defaulted for failure to appear, and the plaintiff settled the claim against the Ames defendants for the sum of $1500.

At trial, Taylor elected to represent himself. After the close of the evidence, the court announced that there was insufficient evidence to support the second and third counts against Taylor. It therefore charged the jury on the negligence count only. The jury found Taylor negligent and returned a verdict in favor of the plaintiff for $60,000 in economic damages and $40,000 in noneconomic damages. The negligence of Taylor and the plaintiff was assessed at 50 percent each, resulting in a damages award against Taylor of $50,000. The court then charged the jury on the issue of damages against Woodbury and the jury returned a verdict in favor of the plaintiff for $120,000.

Taylor and Woodbury filed several posttrial motions. Both defendants were represented by counsel at the hearing on the motions. The court denied Taylor's motion to set aside the verdict, for a new trial or for a remittitur, but reduced the damages award against him to $40,794.36 following a collateral source reduction

[2] Romney Ames parked the vehicle and Ronald B. Ames and Lillian Ames, Romney's parents, were believed to own the vehicle.

hearing.[3] The court also granted Woodbury's motion to set aside the award of $120,000 in favor of the plaintiff. These appeals followed. Additional facts and procedural history will be provided as necessary.

# I

## A

Taylor first claims that the court improperly failed to set aside the verdict against him because the conduct of the plaintiff's counsel and the absence of a curative instruction violated his right to a fair trial. He claims that counsel for the plaintiff (1) made prejudicial remarks and introduced irrelevant and highly prejudicial evidence as to the character of both parties, (2) made closing arguments based on facts not in evidence, (3) made "golden rule" arguments and (4) misstated

---

[3] General Statutes § 52-225a provides in relevant part: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987 . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

the applicable law. He argues that the court had a duty to intervene and, because it did not, the verdict should be set aside and a new trial ordered despite his failure to object. We disagree.

"Our standard of review, where the trial court's action on a motion to set aside a verdict is challenged, is whether the trial court clearly abused its discretion. . . . The decision to set aside a verdict is a matter within the broad legal discretion of the trial court and it will not be disturbed unless there has been a clear abuse of that discretion. . . . The trial court may set aside a jury's verdict only if it finds that the jury could not reasonably and legally have reached its conclusion." (Internal quotation marks omitted.) *Honan* v. *Dimyan*, 52 Conn. App. 123, 129, 726 A.2d 613, cert. denied, 249 Conn. 909, 733 A.2d 227 (1999).

Where a claim is made that remarks by opposing counsel jeopardized a party's right to a fair trial, "[a] verdict should be set aside if there has been manifest injury to a litigant, and it is singularly the trial court's function to assess when such injury has been done since it is only that court which can appraise the atmosphere prevailing in the courtroom. . . . The trial judge has discretion as to the latitude of the statements of counsel made during argument." (Citations omitted.) *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 205, 470 A.2d 705 (1984). "If a counsel's remarks so prejudice the ability of a party to obtain a fair trial, a new trial is mandated. . . . [I]n such exceptional cases, the verdict should be set aside and a new trial ordered, regardless of whether the opposing party took exception to the remarks." (Citations omitted.) Id., 204.

1

Taylor first claims that he was denied his right to a fair trial because the plaintiff's counsel made prejudicial remarks regarding the character of both parties and

introduced irrelevant and highly prejudicial character evidence. He argues that counsel repeatedly attempted to prejudice the jurors by describing the plaintiff as good and truthful, the plaintiff's father as a Superior Court judge and Taylor as a liar who flouted the law by holding illegal concerts on his property. He further argues that the prejudicial impact of such conduct was magnified because he was a pro se litigant acting as his own advocate. We disagree.

In his answer to the plaintiff's complaint, Taylor alleged that the plaintiff did not pay the rental fee for his sled, did not purchase a lift ticket and "was under the influence of alcohol, drugs or both" on the night of the accident. In his subsequent deposition, Taylor made similar allegations and added that the plaintiff and his friends had been on the premises before and were troublemakers. These allegations set the stage for future remarks at trial by the plaintiff's counsel concerning the issue of character.

The plaintiff's counsel was the first to make an opening statement. He initially reminded the jurors that his remarks did not constitute proof or evidence, but then stated that Taylor had not testified truthfully at his prior deposition and would lie in testimony before the court by saying that the plaintiff was a "bad kid" who was using alcohol, marijuana and possibly speed on the night of the accident. He also suggested that Taylor did not call the police or an ambulance following the accident because he was holding an illegal concert on his property and "he didn't want the police to know. He didn't want the town to know." By contrast, he described the plaintiff, his family, his friends and his physicians as "truthful people" and portrayed the plaintiff as "a good kid from a good family. His dad is a Superior Court judge, like Judge Hodgson. . . . He's a good boy."

Taylor's opening statement responded in kind. He suggested that the plaintiff and his friends did not obey club rules, had sneaked alcohol onto the premises during previous visits and that the plaintiff did not pay for use of the sled or a lift ticket on the night of the accident. Describing the plaintiff's trip down the slope as an irresponsible "joyride," he stated that he felt sorry both for the plaintiff and his family because of what the plaintiff had put them through.

During the trial's evidentiary phase, the plaintiff's counsel queried Taylor about his deposition, specifically, his allegations that the plaintiff did not pay for using the sled and that he was under the influence of alcohol and drugs. Taylor testified that he had had a previous run-in with the plaintiff and that the plaintiff had told him after the accident: "My father is going to kill me; I wasn't even supposed to be here tonight." Later in the trial, the plaintiff's mother testified that her husband was a Superior Court judge. When the plaintiff took the stand, he also testified that his father was a Superior Court judge, like the trial judge,[4] and a "good

---

[4] The following colloquy occurred:

"[Plaintiff's Counsel]: Over the last two days, Paul, your mother was with you; correct?

"[Plaintiff]: Yes.

"[Plaintiff's Counsel]: She isn't able to be here today; correct?

"[Plaintiff]: Correct.

"[Plaintiff's Counsel]: Who did come with you today?

"[Plaintiff]: My father.

"[Plaintiff's Counsel]: And is he in the courtroom?

"[Plaintiff]: Yes, he is.

"[Plaintiff's Counsel]: And you could just point him out so that the jurors can see him?

"[Plaintiff]: (The witness indicated.)

"[Plaintiff's Counsel]: And he's a judge of the Superior Court as well, like Judge Hodgson; correct?

"[Plaintiff]: Correct.

"[Plaintiff's Counsel]: Now lawyers don't like to get involved much with judges, so I'm just going to ask you one thing. Is he a good dad?

"[Plaintiff]: Yes, he is."

dad." At counsel's request, he pointed to his father, who was sitting in the courtroom, so that the jurors could see him. When Taylor cross-examined the plaintiff, he alluded to the plaintiff's possible illegal use of alcohol on the premises, which the plaintiff denied.

Another witness for the plaintiff, Peter Hughes, a former Woodbury town planner,[5] testified that Taylor's facility had been subject to several cease and desist orders during his tenure, that Taylor had "a history with the town going back some twenty or twenty-five years," that a review of the records showed that since 1982 Taylor had had repeated disputes with the town involving concerts at his facility, that he believed Taylor did not consider himself bound by town zoning laws and that a number of injunctions had been issued against the facility as long ago as 1991 or 1992 regarding zoning issues. Hughes elaborated on his direct testimony during a lengthy cross-examination by Taylor. The plaintiff's counsel also introduced into evidence, over Taylor's objection, a 1991 order for a temporary injunction enjoining Taylor from holding nighttime concerts at the club.

In his closing argument, the plaintiff's counsel again referred to the purportedly illegal concert on the night of the accident. "[H]ad he obeyed the law, we wouldn't be here today, because he doesn't have a right to hold a concert on his property, and we know that because he was under injunction in this very court, issued years before." Counsel also returned to the theme of the plaintiff's "good" character and his upstanding family, stating that "I think it was very, very wrong about what this man has done to that boy and to his dad and his mom and sisters and to you." He argued that Taylor had been

---

[5] Hughes testified that he was employed by the town of Woodbury for approximately four and one-half years following the March, 1993 accident, but that his tenure had ended before commencement of the trial.

"making up" stories about the plaintiff and his friends, "calling them drunk, saying they used drugs, calling him reckless, calling him drunk and stupid . . . ." He added: "[T]hese are my friends, the judge and his wife; and they're all my friends. That's part of why I'm here on his behalf . . . ."

Taylor responded in a similar vein. "[Q]uite frankly, [the plaintiff's] friends are really the type of individuals that give me a lot of the hassles all night . . . ." He claimed that the plaintiff did not pay for a lift ticket or for his use of the sled, that he probably "snuck in through the back door like the rest of his friends" and that the plaintiff had lied about these matters to the jury. He repeated the allegation that the plaintiff and his friends may have brought alcohol onto the premises.

During rebuttal argument, the plaintiff's counsel referred to Taylor's verbal attacks on the plaintiff's friends and family. "The only thing he seems to be able to talk about is to mock the Murray family. He talks about [the plaintiff] and his friends." "You don't just walk around and slander your neighbors, make fun of our friends, mock people who you don't know about." He again referred to the allegations in Taylor's pleadings that the plaintiff was under the influence of alcohol and drugs on the night of the accident and to testimony by one of the physicians that there was no evidence suggesting that the plaintiff should have been tested for alcohol or drug use after he was brought to the hospital. Counsel eventually concluded: "I think we know that every single person who came into this courtroom was a good person, who made a good appearance, who told an honest, straightforward story, except one. Every doctor was truthful and honest. They think the world of this boy. They think the world of his family because he's a good boy. . . . And a responsible mother, a caring woman, a sophisticated woman, a registered nurse . . . looked you in the eye and told you

her son is a good boy. She's proud of him. She's proud of the rest of her family. She thanks God she still has him. And if you counted on the Rod Taylors of the world to set standards for how you will be cared for when someone wants your money or your business, or how your families will be cared for when someone wants your money or your business, God help us all."

Before commencement of the trial, the court advised counsel as to the proper procedure for making objections. Thereafter, the plaintiff's counsel made frequent objections, but Taylor did not. Although Taylor objected when the 1991 order for a temporary injunction was admitted into evidence, he did not take exception to any of the disputed testimony and remarks of counsel at the time they were made, nor did he ask for a curative instruction. The court nonetheless advised the jury that arguments by counsel do not constitute evidence and should be taken simply as argument, and that "obviously, your verdict must not be arrived at [on] the basis [of] prejudice in favor [of] or against any party and not on the basis of sympathy for any party. Parties come to court asking simply for an impartial determination of the claims they have made in the lawsuit based on the facts and on the law. That is what they are entitled to. That is how you should approach your decision in this case." The court also instructed the jurors that they were not to decide whether the concert was an illegal use of the property.

In its memorandum of decision denying Taylor's post-trial motions, the court acknowledged his pro se status, but also pointed out that the court had informed him prior to the trial that he would be held to the same rules and procedures as attorneys. The court further noted that Taylor had stated in the course of the trial that "he had tried cases pro se previously." The court explained that "Taylor's arguments imply a duty of the court to assist a pro se party. While a judge trying a

case in which one party is acting pro se must be careful, as always, to preserve the fairness of the trial, the adversary system is not suspended, and the judge cannot become the adviser or tactician for the pro se party. People who choose to represent themselves must be accorded the dignity of their own choice. They, like lawyers, must be assumed to be making choices of strategy, and the court cannot presume to determine when a failure to object is tactical and when it is not. The mention by plaintiff's counsel of the occupation of the plaintiff's father was a risky one: a jury might as easily be offended or put off by such an affiliation. Taylor's failure to object could have proceeded from his calculation that the jury would react negatively to this information, and, indeed, to plaintiff's counsel's other arguments to the jury.

"In his brief, the defendant Taylor implies that if a party chooses to try a case pro se and then hires counsel, his omissions or mistakes of strategy at trial should entitle him to a new trial. Such a suggestion overlooks the fact that litigants are entitled to one trial, not two, and that dissatisfaction at the result of the decision to try the case pro se does not create a right to burden one's adversary with the expense in time and money of a second trial. The Supreme Court has ruled that failure to object at the proper time or to request a curative instruction or charge constitutes a waiver of a claim of error. *Skrzypiec* v. *Noonan*, 228 Conn. 1, 13, [633 A.2d 716] (1993)." The court did not address Taylor's other claims regarding the issue of character, namely, the legality of the concert, his history of zoning disputes with the town, and counsel's remarks during his opening statement and closing argument as to the parties' truthfulness or credibility.

In *Yeske* v. *Avon Old Farms School, Inc.*, supra, 1 Conn. App. 195, we considered a similar complaint of improper conduct by the plaintiff's counsel. In that case,

counsel commented during rebuttal argument about the appearance of the defendant's counsel, the size of his firm, the position of his counsel table and the type of clients he represented. Id., 204 n.8. He also suggested that his opponent would lie and resort to trickery to win his case. Id. We characterized such remarks as "tasteless," "flagrantly prejudicial" and "far beyond the boundaries of legitimate comments made during the heat of forensic warfare," and concluded that "[n]o curative instruction by the court could remedy their maliciousness." Id., 203–204.

In concluding as we did in *Yeske*, we cited *Edwards* v. *Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975), *State* v. *Ubaldi*, 190 Conn. 559, 575, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983), and *Hennessy* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 710, 52 A. 490 (1902). In *Edwards*, the plaintiff's counsel in his closing argument discussed the value that his own son would place on his father's life, played on his personal association with the decedent, evoked imagery of the decedent's children crying at his gravesite while forlornly waiting for their father to return and urged upon the jury the need for retributive payments. *Edwards* v. *Sears, Roebuck & Co.*, supra, 286. In *Ubaldi*, the state in its summation to the jurors deliberately attempted to circumvent two of the court's prior evidentiary rulings by making comments that implied that the defendant associated with a person who had been identified as a "bookie" and thus was involved with illegal gambling. *State* v. *Ubaldi*, supra, 574–75. In *Hennessy*, the plaintiff's counsel, in a lengthy and passionate argument, portrayed the defendant insurance company as a "rich corporation" and "one of the worst land-sharks and plunderers that I ever saw."[6] (Internal quotation marks omitted.) *Hennessy* v. *Metropolitan Life Ins. Co.*, supra, 709.

---

[6] In *Hennessy*, the plaintiff's counsel spoke as follows: "Oh, yes! You can arraign counsel who have courage enough to attack one of these insurance

Here, while comments by the plaintiff's counsel that Taylor was a liar and the plaintiff was good and truthful were arguably inappropriate, and even unethical,[7] they originally were made in response to Taylor's allegations regarding the plaintiff's character in his answer and deposition, and counsel reasonably could have anticipated that Taylor would make the same allegations at trial. As the trial progressed, both sides vigorously argued and elicited testimony on the issue of character, with Taylor repeatedly referring to the questionable conduct of the plaintiff's friends and to the fact that he, Taylor, felt sorry for the plaintiff's family. We conclude that such comments do not qualify as tasteless, flagrantly prejudicial or malicious under *Yeske* and were not so extreme as to have deprived Taylor of his right to a fair trial in the absence of a timely objection or request for a curative instruction and in view of Taylor's own numerous references to his opponent's character. As for remarks and testimony elicited by the plaintiff's

companies, and cannot be scared out after two years and a half fight; you can arraign them, but I tell you it won't put an angel's wings on Hegeman [president of the defendant company] . . . either. The president of a corporation who [doesn't] dare answer whether he has committed perjury or not in this State, and the man who says that he knew this man was not a fit subject of insurance, and yet allowed a policy to be issued which he knew his company never intended to pay, and to take her premiums year after year, and put them in their pockets; and my friend says we have the remedy now to sue them for those premiums. Yes, gentlemen, and have another two years and a half fight, and an expense ten times the amount of the premiums. Of course they could well enough pay it. What is the use? Spend all that time and money and expense fighting this rich corporation to get back those few premiums! This poor woman cannot do it: they know we can't. That is wherein this corporation, it seems to me, is one of the worst land-sharks and plunderers that I ever saw. It is among the poor, yes, he says, the uneducated people. Yes, my client is poor, she is uneducated, and she cannot understand how these fellows come around and get her to pay her money in, and then when she wants her pay from the insurance company she can't get it." (Internal quotation marks omitted.) *Hennessy* v. *Metropolitan Life Ins. Co.*, supra, 74 Conn. 709.

[7] Rule 3.4 (5) of the Rules of Professional Conduct provides in relevant part that a lawyer shall not "state a personal opinion as to the . . . credibility of a witness [or] the culpability of a civil litigant . . . ."

counsel regarding the purportedly illegal concerts and Taylor's past disputes with the town, we do not regard them as unfairly prejudicial because Taylor's lengthy cross-examination of Hughes elicited substantially more information on the subject than did the questions of counsel. Moreover, the court specifically instructed the jury not to consider the legality of the concert on the night of the accident, thus curing the potentially prejudicial effect of the remarks and testimony.

Far more serious and troubling are counsel's repeated references to the occupation of the plaintiff's father, his personal friendship with the judge and his family, his invitation to compare the plaintiff's father with the presiding judge at the trial and his request that the plaintiff point to his father, who was sitting in the court-room, so that the jurors could see him. Indeed, such a bold and deliberate attempt to bolster the plaintiff's credibility at Taylor's expense comes perilously close to the threshold of highly prejudicial and unfair argument. "We . . . do not condone comments by counsel that go beyond the bounds of forceful advocacy. . . . [T]he trial court [however] was in the best position to assess the possible prejudice, if any, that may have resulted from counsel's comments, and to fashion an appropriate remedy from a range of possible alternatives. . . . The defendants were obliged, therefore, to raise in the trial court their objections to counsel's improper remarks. Because they failed to do so, the defendants are entitled to a new trial only if they can demonstrate that such relief is necessary to remedy a manifest injustice." (Citations omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 687–88, 657 A.2d 1087 (1995). We are not persuaded that Taylor has met this burden.

We conclude that any prejudice that may have resulted from counsel's remarks was minimal. In its charge to the jury, the court stated that the verdict must not be based on sympathy or prejudice for or against

either party and that the duty of the jury was to make an impartial determination of the claims in the lawsuit on the basis of the facts and the law. The jury's conclusion that each party was equally at fault may be viewed as evidence that it took those instructions seriously. Furthermore, as the court noted, a jury just as easily might have been offended as favorably impressed by counsel emphasizing the fact that the plaintiff's father was a Superior Court judge. We also find persuasive the court's observation that Taylor's failure to object might have been intentional and proceeded from his calculation that the jury would react negatively to this heavy-handed attempt to curry favor. Taylor conceded that he was not inexperienced in the courtroom and had tried cases pro se previously. Moreover, before the trial commenced the court specifically instructed the parties as to the proper manner of making objections, and Taylor was continually reminded of his right to object by the frequent objections of counsel to Taylor's own courtroom conduct. Furthermore, the remarks at issue did not consist of accusations against the defendant or his counsel; see *Yeske* v. *Avon Old Farms School, Inc.*, supra, 1 Conn. App. 195; did not appeal to the jurors' sympathy by means of evocative imagery; see *Edwards* v. *Sears, Roebuck & Co.*, supra, 512 F.2d 286; did not defy a prior court ruling; see *State* v. *Ubaldi*, supra, 190 Conn. 574–75; and were not clothed in the florid language of a lengthy and passionate speech; see *Hennessy* v. *Metropolitan Life Ins. Co.*, supra, 74 Conn. 709; but consisted of relatively isolated references to the occupation of the plaintiff's father. We acknowledge that these references, by implication, may have conveyed a point of view about each of the parties, but we conclude that they cannot be said to have substantially affected the fairness of the trial when considered in its totality. This conclusion is consistent with similar

judgments in other cases alleging inappropriate remarks by counsel.[8]

Taylor argues that a civil judge is not merely an umpire in a forensic encounter but is a minister of justice. He argues that the plaintiff's counsel went beyond the bounds of fair advocacy and that the trial judge was obligated to take every reasonable step to protect his rights, including the issuance of a reprimand.

" 'The trial judge may be under a duty to reprimand counsel in order to protect the rights of litigants.' " *Cameron* v. *Cameron*, 187 Conn. 163, 169, 444 A.2d 915 (1982). Here, however, the court noted, and we agree, that "the judge cannot become the adviser or tactician for the pro se party. People who choose to represent themselves must be accorded the dignity of their own choice. They, like lawyers, must be assumed to be making choices of strategy, and the court cannot presume to determine when a failure to object is tactical and when it is not."

We, therefore, conclude that the court did not abuse its discretion in denying Taylor's motion to set aside the verdict on the basis of improper remarks and evidence as to the truthfulness or credibility of the parties, the purportedly illegal concerts Taylor held on his prop-

---

[8] In *Rizzo Pool Co.* v. *Del Grosso*, supra, 232 Conn. 686–87 n.33, comments made by the plaintiff's counsel in rebuttal to the defendant's closing argument that " 'I have over thirty years heard many arguments by many people, both in and out of courtrooms. I've never heard one which is a combination of such sleaze, slime and innuendo as the one that I just was unfortunately victimized into listening to' "; that the defendant had resorted to the use of " 'weasel words' " during his testimony; and several other inappropriate, albeit less provocative comments were deemed insufficient to warrant a new trial. See also *Weller* v. *Fish Transport Co.*, 123 Conn. 49, 60–61, 192 A. 317 (1937) (where argument by plaintiff's counsel that defendants produced testimony of drinking by plaintiff to save their " 'filthy money' " was described by court as unwarranted and improper but insufficient to entitle defendant to new trial).

erty, Taylor's history of zoning disputes with the town or the profession of the plaintiff's father.[9]

2

Taylor next claims that he was denied a fair trial because the plaintiff's counsel made prejudicial closing arguments based on facts not in evidence. He claims that counsel introduced facts about the flexible flyer sled that encouraged the jury to find that Taylor's rented sled, which was not a flexible flyer, was unsafe and contributed to the accident. He argues that the evidence did not support such a claim, the court already had ruled that it would not charge the jury on the claim and the court had admonished counsel beforehand that closing arguments were not an occasion to testify. We do not agree that the argument concerning the sled was prejudicial to Taylor.

After the close of the evidence, the court advised counsel that it was inclined to submit only two of the plaintiff's eight negligence claims to the jury because the remaining six claims, including the claim of a defective sled, were either repetitive or lacked evidentiary support.[10] The court also reminded counsel not to engage in improper closing arguments: "I will remind you that . . . closing argument . . . is not an occasion to testify. . . . You can only argue from what has come in already in the evidence. You can refer to the things that came into evidence; you can't add more evidence, or anything that didn't already come in."

During closing argument, however, the plaintiff's counsel compared the plaintiff's sled to the flexible

[9] We emphasize that members of the bar should discipline themselves to adhere to our rules of practice and evidence, whether faced with opposing counsel or a pro se litigant, and no member of the bar should take unfair advantage of a pro se litigant, regardless of the litigant's professed education or "experience" in the courtroom.

[10] See part I C 1.

flyer of former days, saying that the flexible flyer was "[a] lot better than these pieces of plastic that they sell to kids nowadays. . . . [A] lot better sled than this thing because you can steer it. . . . It was made out of oak wood and steel runners in the front and you could actually move the [runners] so you could steer it, and you could sit on it and use your feet to steer it . . . ." These days, he said, "kids get on pieces of cardboard . . . and they slide down hills. They get on a piece of plastic like this . . . and all it is is a piece of plastic, and you get on it and point and slide down and it stops." In discussing the reasons why the plaintiff's sled had crashed into the vehicle, he concluded that the vehicle should not have been parked where it was and that the sled "doesn't have a brake; it wasn't a flexible flyer. You couldn't steer it." Taylor did not object to these comments at the time they were made.

The court ultimately decided to instruct the jury on four of the plaintiff's eight negligence claims. The claims were that Taylor (1) allowed customers to slide on slopes too steep and that produced speeds too great for their safety, (2) allowed and failed to restrict parking in areas he knew or should have known could create a hazard for users, (3) failed to erect proper fences or barriers and (4) failed to provide adequate warnings. In concluding its instructions on the negligence claims, the court stated, "Now in order to prove his claim . . . [the plaintiff] must prove [that the defendant] Taylor was negligent in at least one of the ways claimed and that this negligence was a substantial factor in causing the collision . . . ."

"A well established rule is that a statement by counsel, not under oath, of a material fact pertinent to the issues unsupported by evidence, and prejudicial to the opposing party, constitutes reversible error unless it appears that the prejudicial effect has been effectively averted by an instruction to disregard the statement,

or otherwise. . . . It is the duty of [this court] to weigh the probable effect of the statement upon the issues of the case, then look to the action of the trial court in dealing with it, and if it is reasonably clear that the effect has not been eliminated, reversal is required." (Internal quotation marks omitted.) *Fonck* v. *Stratford*, 24 Conn. App. 1, 3, 584 A.2d 1198 (1991).

We conclude that comments by the plaintiff's counsel comparing the flexible flyer sled with the sled used by the plaintiff did not introduce material facts pertinent to the issues in this case because the court specifically instructed the jury to consider only four of the plaintiff's eight negligence claims, none of which included the claim of a defective sled. Accordingly, the argument concerning the sled was irrelevant to the jury's determination of negligence and the court did not abuse its discretion in failing to grant Taylor's motion on that ground.

3

Taylor next claims that the plaintiff's counsel improperly made a "golden rule argument" that encouraged the jury to decide the case on the basis of personal bias rather than on the evidence. He claims that counsel improperly (1) asked the jurors to imagine that they had suffered the same injury as the plaintiff when placing a value on his noneconomic damages and (2) referred to a recent trip to the facility by a juror and his children. We do not agree that these remarks resulted in significant prejudice to Taylor.

Twice during closing argument, the plaintiff's counsel referred to the jurors. In discussing the club's lack of insurance coverage he stated: "Well, when people— and I know one of you actually went there with your children—I know this was told, that one of the jurors went there with their children, and I guess he probably didn't know that if his child had gotten hurt, there was

no insurance to take care of that situation." In discussing the damages award, he argued: "Those are all part of the damages that come into the noneconomic damage, and I'm not going to stand here and suggest numbers to you. Actually, I could, but I don't know. Somehow in my own mind, I don't think it's the right thing to do because I think it's easier for you folks to sit together and say to yourselves, if this happened to me, what do I think is a fair and just amount of money for noneconomic damages for what the boy suffered?" Taylor did not take exception to these comments prior to filing his motion to set aside the verdict.

"A golden rule argument is one that urges jurors to put themselves in a particular party's place . . . or into a particular party's shoes. . . . Such arguments are improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. . . . They have also been equated to a request for sympathy." (Citations omitted; internal quotation marks omitted.) *Nastri* v. *Vermillion Bros., Inc.*, 46 Conn. Sup. 285, 289, 747 A.2d 1069 (1998).

In *Nastri*, as here, the plaintiff's counsel made a golden rule argument with respect to the jury's calculation of noneconomic damages. To counteract its potentially prejudicial effect, the *Nastri* court specifically addressed the argument in its instructions to the jury and cautioned the jurors in strong terms not to let sympathy affect their decision. The court ultimately concluded that the argument had not influenced the jurors because the noneconomic damages award was relatively low and the jury assessed 25 percent of the responsibility for damages to the plaintiff. The court stated that "whether or not the plaintiff's counsel crossed the line into golden rule territory, the court concludes that the defendants suffered no injury as a

result of his argument and were not deprived of their right to a fair trial." Id., 291.

We likewise conclude that, although the plaintiff's counsel may have "crossed the line into golden rule territory," Taylor did not make a timely objection and suffered no injury as a result of the argument. Although the court did not specifically refer to the argument in instructing the jury, it cautioned the jury not to base its decision on sympathy or prejudice toward either party. Moreover, the noneconomic damages award of $40,000 does not seem excessive in light of the plaintiff's extensive injuries and the fact that the jury assessed 50 percent of the responsibility for damages to the plaintiff. Accordingly, we conclude that the court did not abuse its discretion in failing to set aside the verdict on the ground that counsel made an improper golden rule argument.

4

Taylor finally claims that the plaintiff's counsel misstated the applicable law. He argues that the applicable standard of care he owed to the plaintiff was the same as that owed to the patrons of ski area facilities, but that the plaintiff's counsel improperly advised the jury that the applicable standard of care was that owed pursuant to ordinary principles of negligence. We disagree.

During his closing argument, counsel stated: "The simple fact of the matter is that Paul got hurt, and the law entitles him to recover damages for getting hurt." He suggested that Taylor's liability for the sledding accident was the same as the liability of a shopping mall owner for a fall by one of its patrons on the ice and snow in its parking lot, and that in neither case was assumption of risk, a principle relevant in assessing liability for accidents at ski facilities, an appropriate defense.

We conclude that the applicable standard of care Taylor owed to his patrons was that owed under ordinary principles of negligence, and we reject Taylor's claim for the reasons discussed in part I C 2 of this opinion. Accordingly, the court did not abuse its discretion in denying Taylor's motion to set aside the verdict on the ground that the plaintiff's counsel misstated the applicable law.

We also conclude that, because we have determined that Taylor's individual claims of misconduct by the plaintiff's counsel did not deprive him of a fair trial, and in light of Taylor's failure to make a timely objection, the *cumulative* effect of the individual claims of negligence by counsel cannot be said to have deprived Taylor of a fair trial or caused him manifest injury under the standard set forth in *Yeske*. See *Yeske* v. *Avon Old Farms School, Inc.*, supra, 1 Conn. App. 205.

B

Taylor next claims that the trial court improperly failed to set aside an excessive verdict because there was no evidentiary support for an economic damages award of $60,000. He claims that the plaintiff incurred only $20,677.12 in past medical expenses and that the evidence indicated future medical expenses of $18,000 to $28,000. Taylor, therefore, contends that there is no basis for a total economic damages award in excess of $48,677.12 and that the verdict was a product of jury error and confusion. We disagree.

The plaintiff presented evidence that he incurred $20,677.12 in medical expenses following the accident. His dentist also testified that additional medical procedures to maintain the restoration of his teeth and jaw would be required every ten to fifteen years, at an estimated cost of $5600 for each procedure. The plaintiff was eighteen years old at the time of the accident and the court took judicial notice that his life expectancy

was seventy-four years. After considering the testimony and the evidence, the jury returned a verdict awarding the plaintiff $60,000 in economic damages.

"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . This right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to [a] verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. . . . In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness. . . . This is so because [f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, on the printed record, what factors, if any, could have improperly influenced the jury. . . . It is the function of this court to determine whether the trial court abused its discretion in denying [a defendant's] motion to set aside

the verdict." (Internal quotation marks omitted.) *Ham* v. *Greene*, 248 Conn. 508, 536, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999).

"[A]lthough the trial court has a broad legal discretion in this area, it is not without its limits. . . . The evidential underpinnings of the verdict itself must be examined. Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached. . . . [I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work their will." (Internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 478, 760 A.2d 117 (2000), aff'd, 257 Conn. 359, 777 A.2d 681 (2001).

We conclude that the economic damages award falls within the limits of just damages, is reasonably supported by the evidence and does not so shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. It is undisputed that the plaintiff incurred $20,677.12 in medical expenses following the accident. The plaintiff's dentist estimated that future medical procedures would be required every ten to fifteen years to maintain the restoration of the plaintiff's teeth and jaw. Because the plaintiff was eighteen years old at the time of the accident and has a life expectancy of seventy-four years, he is likely to require three to five additional

dental procedures during his lifetime. If each procedure costs approximately $5600, the plaintiff may incur $16,800 to $28,000 in future medical expenses as a result of his injuries. The defendant points out that these calculations support, at most, an economic damages award of $48,677.12.

Nevertheless, we conclude that, although the jury awarded the plaintiff $11,322.88 more in damages than is supported by this evidence, the award is not unreasonable. The plaintiff's life expectancy and the cost of each future medical procedure were estimated. The actual cost of future medical procedures may be more than presently anticipated and, if the plaintiff lives longer than seventy-four years, six or more procedures may be required rather than five. Furthermore, because the jury found comparative fault, the defendant is responsible for only half of the damages awarded. The $11,322.88 in "excess" damages awarded thus results in an "added" financial obligation to each party of $5661.44. That amount is not unreasonable in light of the inexactitude inherent in the estimation process. Accordingly, we conclude that, viewing the evidence in the light most favorable to the plaintiff, the verdict is not contrary to the law or the evidence, and the court did not abuse its discretion in failing to set aside the economic damages award against Taylor.

C

Taylor next claims that the court improperly instructed the jury because it (1) submitted to the jury claims not supported by the evidence,[11] and (2) failed to charge the jury on the law and special defenses available to ski area operators. We disagree.

1

We turn first to Taylor's claim that, notwithstanding the court's initial proposal to submit only two of the

---

[11] Taylor characterizes this evidentiary claim as one of instructional error.

plaintiff's eight claims of negligence to the jury, the court improperly charged the jury on four claims of negligence. This claim has no merit.

The plaintiff made eight claims of negligence against Taylor, namely, that Taylor negligently (1) permitted sledding in areas too steep for safety, (2) allowed parking in areas that he knew or should have known could create a hazard for users of the adjoining slope, (3) failed to restrict parking in areas so close to the slope as to create a hazard to users of the slope, (4) failed to provide proper warnings, (5) failed to provide proper lighting, (6) failed to provide safe sleds, (7) failed to erect proper fences or barriers and (8) failed to remove dangerous obstacles from the path of sledders.

Both parties submitted written requests to charge the jury. Prior to instructing the jury, the court held a charge conference on the record. Referring to the eight claims of negligence, the court stated: "It appears to me that the only two claims that should properly be submitted to the jury are the claims that the defendant was negligent in allowing vehicles to be parked in the area where the Ames' truck was located, and not requiring its removal; that's one. The other is the claim of negligence in not erecting fences or barriers to prevent sledders from going into the area where the Ames' truck was. With regard to other individual claims of negligence, I find they either restate those claims in other words or were not supported by the evidence."

When the court discussed the proposed charge with counsel, the plaintiff's counsel objected to its limited scope. He requested that the court charge the jury on the three additional claims that Taylor permitted sledding on slopes that were too steep, failed to provide proper warnings and failed to remove dangerous obstacles from the path of sledders. Taylor objected to expanding the charge, but the court made no further

comment. Thereafter, the court instructed the jury to consider two of the three additional claims proposed by the plaintiff's counsel.[12]

"To preserve a challenge to the jury charge, the defendant must make a written request to charge, or take exception to the jury instructions when they are given by the trial court." (Internal quotation marks omitted.) *State* v. *Faria*, 254 Conn. 613, 632, 758 A.2d 348 (2000). Since Taylor timely filed a written request to charge, his claim is properly before the court.

The standard we use in reviewing evidentiary matters, including the sufficiency of the evidence to submit a claim to the jury, is abuse of discretion. See *Cooks* v. *O'Brien Properties, Inc.*, 48 Conn. App. 339, 348–49, 710 A.2d 788 (1998). Accordingly, "great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) Id.

"Issues that are not supported by the evidence should not be submitted to the jury." *State* v. *Hawkins*, 19 Conn. App. 609, 618, 563 A.2d 745, cert. denied, 212 Conn. 820, 565 A.2d 540 (1989). Here, contrary to Taylor's claim, the court did not decide which claims of negligence to submit to the jury until both parties had a full and fair opportunity to comment on the court's initial proposal. After considering the comments of counsel, the court determined that two additional claims of negligence had sufficient evidentiary support to be submitted to the jury. Taylor provides this court with no valid reason to decide otherwise. He merely

---

[12] The claims were that "Roderick Taylor . . . allowed customers to slide on slopes that were too steep and that produced speeds too great for their safety under all the circumstances that existed at the time . . . and . . . failed to provide adequate warnings to the plaintiff of hazards in his path."

argues that the court had "previously held" that there was no evidence to support the two claims and that it should not have overruled its prior decision to submit the two additional claims of negligence to the jury. Accordingly, making every reasonable presumption in favor of the trial court's ruling, we conclude that the court did not abuse its discretion in submitting four of the plaintiff's eight negligence claims to the jury.

2

Taylor also claims that the court improperly denied his request to charge the jury on the law and special defenses available to ski area operators on the ground that his answer did not identify by number the statutes on which the requested defenses were predicated. He claims that the evidence necessary to support the statutory defense was admitted at trial and that he simply seeks the protection of the legal defenses that are available to him. This claim has no merit.

During the charge conference, Taylor proposed that the court make reference to "the state statute" and the responsibility of skiers to use caution, "basically the responsibility code suggested by the national ski area association." The court rejected Taylor's suggestion because his pleading did not refer to the statute or its number and the pleadings were closed.

When the court reconvened for closing arguments, Taylor raised the issue again. Claiming that he was entitled to a charge on the statutory defenses available to ski area operators, Taylor moved in writing to amend his affirmative defenses by introducing General Statutes §§ 29-212 to 29-214[13] as the context for considering his

---

[13] General Statutes § 29-212 provides in relevant part: "Each skier shall assume the risk of and legal responsibility for any injury to his person or property arising out of the hazards inherent in the sport of skiing, unless the injury was proximately caused by the negligent operation of the ski area by the ski area operator, his agents or employees. . . ."

General Statutes § 29-213 describes prohibited conduct by skiers. General Statutes § 29-214 provides in relevant part: "It shall be a special defense to

negligence claim. The plaintiff objected to the proposed amendment on the ground that the statute applied only to skiers and that it was untimely filed. In denying Taylor's motion, the court stated: "What the case law says about this is that if one is going to raise a defense based on a statute, they have to plead the number, the section number of the statute in order to give the other side timely notice that such a claim is being made.

"Timely notice would mean the ability to know what's going to be the trial of case, and no mention of any of these statutes was made in the original answer and special defense that you filed . . . .

"The reason the rules say that the statutory claim or statutory defense has to be made in the pleadings before the trial starts is so that everyone in the trial will know what the issues are and what kind of evidence to put on. I cannot allow an amendment that opens up a whole new legal issue here . . . . If you had it in your original special defense, [the plaintiff's counsel] would have had a chance to file a motion saying that it did or didn't apply; and that would have all been worked out before trial." The court added that the motion "raised issues that were not set out in the original pleadings as to which the plaintiff has not had notice" and that it would not reopen the evidence for a "last minute" claim.[14] Thereafter, the court charged the jury on the statutory defense of comparative negligence even though Taylor

---

any civil action against an operator by a skier that such skier: (1) Did not know the range of his own ability to negotiate any trail or slope . . . (2) did not ski within the limits of his own ability; (3) did not maintain reasonable control of speed and course at all times while skiing; (4) did not heed all posted warnings; (5) did not ski on a skiing area designated by the operator; or (6) did not embark on or disembark from a passenger tramway at a designated area. In such civil actions the law of comparative negligence shall apply."

[14] We agree with the trial court's reasoning and, therefore, conclude that the court did not abuse its discretion in denying the motion to amend.

again had failed to identify the relevant statute by number.

Our standard of review for claims of instructional impropriety in appeals not involving a constitutional question is well established. "[T]he court must consider the whole charge and it must be determined . . . if it is reasonably probable that the jury [was] misled . . . ." (Internal quotation marks omitted.) *Pajor* v. *Wallingford*, 47 Conn. App. 365, 377, 704 A.2d 247 (1997), cert. denied, 244 Conn. 917, 714 A.2d 7 (1998). "In assessing the adequacy of a charge to the jury, we consider the charge in its entirety, and judge it by its total effect rather than by its individual component parts. . . . We consider whether the instructions are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . The charge must give the jurors a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and must be suited to guide them in the determination of those issues." (Internal quotation marks omitted.) *McSwiggan* v. *Kaminsky*, 35 Conn. App. 673, 677, 647 A.2d 5, cert. denied, 231 Conn. 934, 649 A.2d 256 (1994).

We conclude that it was not reasonably probable that the court misled the jury by failing to charge on the law and special defenses available to the operators of skiing facilities. The court denied Taylor's motion because he did not refer to the statute in his pleadings and the pleadings were closed. In denying his subsequent motion to amend, the court explained that timely notice of a statutory defense is necessary to give the opposing party an opportunity to contest the issues raised. Here, the statutory defense Taylor attempted to raise applies specifically to operators of skiing facilities. Accordingly, charging the jury as Taylor requested might have misled the jurors because the case involved a sledding accident, and there was no opportunity for

plaintiff's counsel to present evidence or make arguments as to whether the statutory defenses available to the operators of skiing facilities also are available in the context of sledding accidents.

Taylor claims that his request to charge the jury on the statutory defense available to ski area operators was similar to his request to charge the jury on comparative fault, where he also failed to identify the relevant statute by number. We disagree. Taylor raised the defense of contributory negligence prior to the trial, and both parties made arguments to the jury on that issue. A similar opportunity was not available with respect to the statutory defense available to ski area operators because Taylor did not raise the defense before the close of evidence. His argument, that raising the statutory defense at a later time did not prejudice the plaintiff because all of the requisite evidence already had been introduced, is irrelevant in light of the fact that the plaintiff still lacked the opportunity to contest the defense at an earlier and more appropriate stage in the proceedings. We, therefore, conclude that the court properly denied Taylor's motion because the court's instructions to the jury were complete, thorough and clearly presented, and there is no reasonable probability that the jury was misled by omission of the requested reference to the statutory defense available to ski operators.

II

The plaintiff cross appeals from the judgment of the court, challenging the granting of Woodbury's motion to set aside the verdict awarding him damages. He claims that, by setting aside the award of $120,000 in damages after entering a default against Woodbury, the court improperly violated the rule of finality applicable to default judgments. He claims that, by virtue of the default, the defendant admitted the truth of the facts

alleged and the proposition of law involved. He thus argues that, in deciding the motion in Woodbury's favor, the court improperly "went behind the default" to explore the nature of the allegations of negligence against Woodbury and their causal relationship to the injuries claimed. We agree.

Woodbury, a corporation, was dissolved and ceased to have a legal existence on March 15, 1985, but continued to be listed as the record owner of the property where the accident occurred. Six months before the trial commenced, a clerk of the court routinely entered a default against Woodbury for failure to appear. Woodbury did not file a notice of intent to contest liability. After the jury rendered a verdict against Taylor, the court submitted to the jury the claim for damages against Woodbury at a hearing in damages. The jury returned a damages award of $120,000 on the basis of the negligence and CUTPA claims.

Before the court rendered judgment on the verdict, Woodbury filed a motion to set aside the verdict on the ground that there was no evidence to support a finding that the plaintiff's injuries were proximately caused by conduct of the dissolved entity. Woodbury specifically claimed that there was insufficient evidence that the sledding activities were conducted on its behalf as a de facto corporation after it ceased to have a legal existence. The court granted Woodbury's motion because "[e]ven in a hearing in damages, where the factual allegations of the complaint are deemed proven by the entry of the default . . . a plaintiff must still prove that the damages claimed were caused by the conduct alleged. . . . In order to have found that any damages suffered by the plaintiff were proximately caused by the actions of the defaulted defendant, the jury would have to have found that it was the corporation that determined where and under what circumstances patrons could use sleds and what facilities to

have on hand for them in case of injuries, or that Mr. Taylor was acting as an agent for the corporation. The only evidence of any conduct by the corporation was the evidence that the property was still in its name. There was no evidence from which the jury could have concluded that defendant Taylor was acting on behalf of or as an agent of the corporation in operating the sledding hill."

The court added that any conclusions by the jury that Woodbury was operating the sledding area at the time of the accident, that Taylor was acting as its agent or that Woodbury's actions proximately caused any of the plaintiff's injuries "could only have proceeded from a mistake by the jury in applying the legal principle that the verdict must be based on a fair preponderance of the evidence as to proximate cause and not on speculation. There was no evidence that [Woodbury] employed Roderick Taylor at the time or that it was in any way in operation as a corporation after it was dissolved. All that was shown was that the property had not been conveyed to shareholders after the dissolution. This court overlooked the above analysis in submitting the claims against the corporation to the jury, but must not, under the principles of *Breen* v. *Phelps*, 186 Conn. 86, 99–100 [439 A.2d 1066] (1982), refuse to acknowledge the merit of a later argument simply because it leads to a different result than a prior ruling made without the benefit of that argument."

"[The] entry of default, when appropriately made, conclusively determines the liability of a defendant." (Internal quotation marks omitted.) *Skyler Ltd. Partnership* v. *S.P. Douthett & Co.*, 18 Conn. App. 245, 253, 557 A.2d 927, cert. denied, 212 Conn. 802, 560 A.2d 984 (1989). "In an action at law, the rule is that the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to entitle the plaintiff

to some of the relief prayed. It is not the equivalent of an admission of all of the facts pleaded. The limit of its effect is to preclude the defaulted defendant from making any further defense and to permit the entry of a judgment against him on the theory that he has admitted such of the facts alleged in the complaint as are essential to such a judgment. It does not follow that the plaintiff is entitled to a judgment for the full amount of the relief claimed. The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive." *United National Indemnity Co.* v. *Zullo*, 143 Conn. 124, 129–30, 120 A.2d 73 (1956); see also *Mechanics Savings Bank* v. *Tucker*, 178 Conn. 640, 644, 425 A.2d 124 (1979).

We conclude that the court improperly granted Woodbury's motion to set aside the verdict. The court determined that there was no evidence from which the jury reasonably could have found that the plaintiff's damages were proximately caused by the conduct alleged and ruled against the plaintiff on that basis. Yet, in an action at law, as here, the liability of a defaulted defendant is established, and the plaintiff's burden at a hearing in damages is limited to proving that the amount of damages claimed is derived from the injuries suffered and is properly supported by the evidence. *Ratner* v. *Willametz*, 9 Conn. App. 565, 575–76, 520 A.2d 621 (1987). We, therefore, cannot agree with the court's conclusion that the plaintiff's claim must fail because he did not provide evidence that Woodbury's negligent conduct proximately caused his injuries, and we reverse the judgment setting aside the verdict on that ground.

### III

The plaintiff also cross appeals from the court's refusal to submit to the jury his CUTPA and recklessness claims against Taylor. He argues that he adequately pleaded the claims, offered evidence to prove them and requested appropriate jury charges. He argues that he

is entitled to a new trial on both claims and that the proper standard for review is the standard used in reviewing a motion for a directed verdict. These claims have no merit.

We initially observe that the court did not direct a verdict on the CUTPA and recklessness claims. Moreover, both claims concern a challenge to the trial court's rulings on evidentiary matters, specifically, whether there was sufficient evidence to submit the plaintiff's claims to the jury. See *Cooks* v. *O'Brien Properties, Inc.*, supra, 48 Conn. App. 348. Accordingly, our standard of review is abuse of discretion, and we will reverse the court's ruling only if it could not have reasonably concluded as it did. Id.

A

The plaintiff's first claim of evidentiary error is that the court improperly refused to submit his CUTPA claim to the jury. He argues that the evidence he offered to support this claim included (1) the testimony of Hughes, the cease and desist orders and the 1991 injunction, all of which related to the purportedly illegal concerts that Taylor held on his property; (2) the fact that the plaintiff went to Taylor's property to attend an illegal concert on the night of the accident; (3) Taylor's refusal to summon help; and (4) Taylor's allegedly inappropriate response to the plaintiff's injury. We disagree.

Count three of the plaintiff's complaint alleged a CUTPA violation against Taylor and Woodbury for failure to provide safe premises, to offer reasonable assistance and to obtain medical help following the accident. Testimony at trial indicated that, after the plaintiff was injured, Taylor took him to the bathroom to clean up and suggested that he get a ride to the hospital with someone on the premises, but did not call the police or an ambulance. After the plaintiff submitted a request to charge that included proposed instructions on the

CUTPA claim, the court informed counsel during the charge conference that it did not intend to charge the jury on the CUTPA claim because it did not believe that the evidence submitted would support a jury determination under the applicable law.

"Section 42-110b (a) [of the Connecticut Unfair Trade Practices Act] provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, [245 Conn. 1, 43, 717 A.2d 77 (1998)]. Moreover, this court has set forth a three part test for satisfying the substantial injury criterion: [1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided. . . . *Web Press Services Corp.* v. *New London Motors, Inc.*, 205 Conn. 479, 484, 533 A.2d 1211 (1987)." (Internal quotation marks omitted.) *Hartford Electric*

*Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 367–68, 736 A.2d 824 (1999).

We conclude that the court did not abuse its discretion in determining that the plaintiff presented insufficient evidence to support a jury charge on the CUTPA claim. Evidence of the purportedly illegal concert and Taylor's past disputes with the town was irrelevant to his allegations of failure to provide safe premises and reasonable assistance, which lie at the heart of his claim. As for evidence that Taylor failed to call an ambulance or the police following the accident, we do not find unreasonable the court's conclusion that this was insufficient to support the charge of a CUTPA violation under the applicable law. Making every reasonable presumption in favor of the trial court's ruling, we, therefore, conclude that the court properly refused to submit this claim to the jury.

B

The plaintiff's second claim of evidentiary error is that the court improperly refused to submit his recklessness claim to the jury. He argues that he offered relevant evidence in support of his claims (1) that Taylor conducted an illegal concert on property under his control the night of the accident, (2) that Taylor knew that a vehicle was in the path of sledders, that it was dark, that no barriers protected the sledders and that people were sledding in the area, but failed to warn Murray of the dangers of sledding in such conditions, and (3) that Taylor refused to offer or obtain proper assistance for the plaintiff after the accident. We disagree.

Count two of the plaintiff's complaint alleged that Taylor's wilful or malicious failure to guard or protect customers from avoidable dangers or to warn them of dangerous conditions, uses, structures or activities caused the plaintiff's injuries. The plaintiff submitted a request to charge on the recklessness claim, but the

court informed counsel during the charge conference that it did not find sufficient evidentiary support for a jury finding of common-law punitive damages on the grounds of reckless, wilful and wanton behavior.

In the common-law context, we have stated that to establish that conduct was wanton, reckless, wilful, intentional and malicious, a party must prove "the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . [*Dubay* v. *Irish*, 207 Conn. 518, 532–33, 542 A.2d 711 (1988).]" (Internal quotation marks omitted.) *Shay* v. *Rossi*, 253 Conn. 134, 181, 749 A.2d 1147 (2000).

We conclude that the court did not abuse its discretion in finding that there was insufficient evidence to support the claim of recklessness. Evidence as to the legality of the concert is irrelevant to this claim, and we cannot say that the court unreasonably concluded that evidence as to the nighttime sledding conditions and Taylor's conduct after the accident was insufficient to support the charges of failure to protect or warn and extreme and reckless disregard for the plaintiff's safety. Because we must make every reasonable presumption in favor of the trial court's ruling, we conclude that the court properly refused to submit this claim to the jury.

The plaintiff cites *Mather* v. *Griffin Hospital*, 207 Conn. 125, 138, 540 A.2d 666 (1988), for the proposition

that he has a right to submit his recklessness claim to the jury under article first, §§ 10 and 19, of the Connecticut constitution. *Mather* states that litigants have a constitutional right to have factual issues resolved by a jury; id.; not that litigants have a right to submit claims to a jury without sufficient evidentiary support. As we previously stated, the court has a duty *not* to submit to the jury any issue on which the evidence would not reasonably support a finding. This is such an issue. Accordingly, the plaintiff's claim must fail.

On the appeal, the judgment is affirmed. On the cross appeal, the judgment is reversed as to the setting aside of the verdict against the defendant Woodbury Ski and Racquet, Inc., and the case is remanded with direction to reinstate the verdict against the defendant Woodbury Ski and Racquet Club, Inc., in the amount of $120,000. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.