[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, John Matava, filed this three count complaint alleging that the defendant improperly auctioned off his property which had been stored at the defendant's storage facility. The first count alleges non-compliance with Connecticut General Statutes § 42-159, et. seq. relevant to self-service storage facilities. The second count alleges violations of the Connecticut Unfair Trade Practices Act (CUTPA); Connecticut General Statutes § 42-110, et. seq.; and the third count is a claim for unjust enrichment. CT Page 1334
The plaintiff has the burden of proving his allegations by a preponderance of the evidence and, in this case, that burden is largely a matter of witness credibility. It is for the trier of fact to decide which testimony to believe or not to believe. In this case the plaintiff's testimony lacks credibility when compared to the testimony of other witnesses, and his veracity is further affected by his 1993 conviction for conspiracy to commit larceny, 2nd degree, for which he was sentenced to a term of eight years, execution suspended after four years with probation for five years. (Def. Ex. 2). Larceny is a crime of moral turpitude which is properly considered under our law in assessing credibility.
 Factual Findings
On April 19, 1997 the plaintiff entered into a rental agreement to rent unit No. 108 in the defendant's self-storage facility at the rate of $89 per month.
On October 29, 1997, a late notice was sent to the plaintiff. On December 9, 1997, another late notice was sent. Two additional so called "final notices" were subsequently sent, (Exhibit B, C, D and E). The plaintiff professed to have no recollection of receiving any of them.
Connecticut General Statutes § 42-160 provides for an owner's lien on property stored at the facility for non payment of rent; § 42-161
et. seq. sets out the procedure an owner must follow in order to sell the property to satisfy the lien.
The defendant noticed an auction to be held on February 7, 1998 to sell the contents of nine units to satisfy its liens, including the plaintiff's unit, No. 108. The notice, admittedly, did not comply with the statute for providing notice, thus any sale would have been in violation and unlawful.
On the morning of February 7, 1998, an antique dealer, Mark Pierce, attended the auction and signed in to bid. Pierce attends such auctions in the regular course of his business, and, on this day he bought the contents of three units, including No. 108. The defendant had opened the door to No. 108 and Pierce could see the unit was about half full. He described the size as approximately 10' x 10'. He did not go far into the unit, if at all, but recalled seeing some tools, a compressor, a satellite dish and some boxes which he did not open — but which from experience he thought probably had clothing and miscellaneous personal items. He bid a "couple of hundred" for the unit with the expectation that he might sell the contents for perhaps $1500. CT Page 1335
Because he was there in his car, after the bidding he put his padlock on the unit and left, planning to return later in the day with his truck to remove the items. Shortly after he left, however, the plaintiff and his wife showed up with money to pay the rental through February 17th. The employee in charge, Laura O'Leary, (who is no longer employed there), was uncertain as to what to do, but she took the money, giving the plaintiff a receipt, and then called the owner Michael Olschafskie on his cell phone for instructions. Olschafskie told Ms. O'Leary to return the money Pierce had bid and to offer Pierce a months free rental for the inconvenience. (Pierce also rented one or more units for himself at the defendant's facility).
When Pierce later returned with his truck he found a big padlock on No. 108 and the lock he had put on it was cut off. The new lock was not put on by either Pierce or Ellington Storage. The logical inference is that Matava did it. Pierce was angry. As he said, he believed that when his bid was accepted he was the owner and he went to the police station for help. The police suggested the best thing to do was to take the offer of a months rental and that it wasn't worth the hassle to pursue his claim. After calmer reflection Pierce accepted the offer of the free rent and his bid money was returned. Pierce never took anything out of Unit 108 and he saw the large padlock in place for at least four weeks thereafter when he would be at the facility.
The credible evidence established that the auction process while unlawfully noticed, was never fully completed. Within hours and on the same day the successful bidder, (Pierce) was given his money back. No property was removed from Unit 108 and the plaintiff had replaced Pierce's padlock with his own. On Sunday, February 8, 1998, Matava wrote a letter to Ellington Storage complaining that there was an overlock on the unit. An overlock is a tamper proof lock used by Ellington Storage when there is unpaid rent. It prevents the renter from accessing the unit even if the renter unlocks his own padlock. An overlock is a distinctive lock easily recognizable as belonging to the storage company. On February 9, 1998, Matava consulted an attorney who apparently made a telephone call to Ellington Storage and Matava thereafter had access to his unit. Matava claims it took several weeks before the overlock was removed and when he finally went into the unit it was essentially empty. He claims that Ms. O'Leary told him the property was sold to Pierce and he claims that Pierce called him offering to sell it back to him for $5000. The plaintiff's account is implausible and contradicted by the evidence from Pierce and Olschafskie. (O'Leary was not called by either party). Matava, after supposedly discovering the missing property had no further discussion with either O'Leary or Olschafskie and this action was commenced in July 1998. Matava vacated the unit in mid-March as he stated he would in his letter of February 8th. While it is unclear as to the CT Page 1336 exact date the overlock was removed, it was likely shortly after February 9th when his attorney became involved but in any event he certainly had access prior to the date he vacated, yet again implausibly, he claims he did not communicate any loss other than telling O'Leary (which as found earlier, is not credible).
Turning to the counts of the complaint, it is conceded that the defendant did not comply with § 42-159, but there was no evidence that the plaintiff suffered damages as a result. No property was taken and the sale was aborted. In his letter of February 8th, to the defendant, Matava claims he lost job income because the overlock prevented him from accessing his tools, but there was no evidence presented to substantiate that claim. And while the overlook prevented access for a period of time there was no evidence of monetary loss as a result. Without proof of damages this count fails.
The second count alleges a CUTPA violation. The Court does not agree that the failure to comply with § 42-110 et. seq. forms a basis for a CUTPA violation on the facts of this case. The plaintiff is required to establish, under the so-called "cigarette rule" (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers. All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree it meets one of the criteria or because to a lesser extent it meets all three, Murrayv. Taylor, 65 Conn. App. 300 (2001).
While this Court is of the opinion that a single act may be sufficient to establish a CUTPA violation, the fact that it is a single act is not strong evidence indicating it is a general business practice. Here the defendant took steps to rectify his error. The plaintiff, although inconvenienced, sustained no monetary loss. Not every mistake is immoral, unethical, oppressive or unscrupulous and this Court concludes the evidence did not establish a CUTPA violation.
The third count alleging unjust enrichment also fails based on the factual findings made. Simply, there was no evidence that the defendant was enriched or that it had benefitted in any way.
Accordingly, judgment shall enter for the defendant.
Klaczak, J. CT Page 1337